Richard SHORTER, Plaintiff,

v.

**VALLEY BANK & TRUST CO., Defendant.**

No. 85 C 9751.

United States District Court, N.D. Illinois, E.D.

Jan. 5, 1988.

Lowell Jacobson, James Brandvik and Craig Anderson, Jacobson, Brandvik & Anderson, Chicago, Ill., for plaintiff.

Gerard Smetana and William J. Mullins, Ruberry, Palmer, Phares & Smetana, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

The parties ended their dispute over the merits of this case last April when plaintiff, Richard Shorter, notified defendant, Valley Bank & Trust Co., of his acceptance of Valley Bank's offer of judgment. Ever since, the parties have hotly contested who is to pay Shorter's attorneys' fees.

On November 19, 1985, Shorter filed a claim against Valley Bank for violation of the Age Discrimination in Employment Act [ADEA], 29 U.S.C. §§ 621–34. The trial in the case was scheduled to begin April 13, 1987. On April 2, 1987, Valley Bank tendered to Shorter an offer of judgment, the body of which read as follows:

### OFFER OF JUDGMENT

TO: Richard W. Shorter, plaintiff, and his attorneys Lowell H. Jacobson, Craig E. Anderson, James A. Brandwik, [sic] Jacobson, Brandwik [sic] & Anderson.

Valley Bank & Trust Company, defendant in the above-entitled action, hereby offers to allow judgment to be taken against it by plaintiff in the sum of $125,000 together with costs accrued to this date.

This offer is made pursuant to Rule 68 of the Federal Rules of Civil Procedure, and evidence of this offer is not admissible except in a proceeding to determine costs. If this offer is not accepted in writing within ten (10) days after it is served, it shall be deemed withdrawn.

Plf.Mot.Ex.A.

Shorter responded on April 7. On that date his counsel tendered to Valley Bank's counsel the following "ACCEPTANCE OF OFFER OF JUDGMENT":

Please take notice that the plaintiff, Richard Shorter, accepts the offer of judgment served by defendant on April 2, 1987, allowing plaintiff to take judgment in this action for $125,000 together with costs accrued up to making of said offer. Under the case law for the wording of this offer, plaintiff's attorneys' fees and costs accrued to date of offer are to be awarded by the court.

Plf.Mot.Ex.B. The following day Shorter presented to the court Valley Bank's offer and his acceptance and proof of service thereof along with an Emergency Motion to Notify Court of Plaintiff's Acceptance of Offer of Judgment and to Set Date for Filing Plaintiff's Petition for Attorneys' Fees and Costs. We scheduled a hearing for the next day, April 9.

In a memo accompanying the emergency motion, Shorter posited two grounds for his entitlement to an award of fees. First, he contended that under the relevant case law his fees were part of "costs," as that term was used in Valley Bank's offer. Valley Bank's agreement to pay "$125,000 together with costs" means $125,000 in addition to costs; if attorneys' fees are costs, Shorter concluded, then they are recoverable too.

Second, Shorter pointed out that the ADEA, under which he had brought suit, provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" 29 U.S.C.A. § 216(b) (West Supp.1987). (This provision is actually part of the Fair Labor Standards Act [FLSA], 29 U.S.C. §§ 201–19. Section 7(b) of the ADEA, 29 U.S.C. § 626(b), incorporates the remedies of the FLSA, including this fee-shifting section.) Because the settlement produced a judgment in his favor, Shorter reasoned, the court must award him attorneys' fees.

At the hearing on April 9, Valley Bank handed the court a memorandum opposing Shorter's motion. Valley Bank's memorandum disputed that Shorter was entitled to attorneys' fees in addition to the $125,000 judgment. Its reading of the case law convinced it that all Rule 68 offers of judgment include attorney's fees—that is, a defendant whose offer of judgment plaintiff accepts never owes more than the amount stated in the offer (plus traditional costs, like those listed in 28 U.S.C. § 1920). Attorneys' fees therefore were not part of the "costs" it offered to pay Shorter.

Furthermore, Valley Bank's memorandum argued, because Shorter stated in his acceptance that he gave a different interpretation than this to the term "costs" as used in the offer, his acceptance was not valid. Under basic principles of contract, a purported acceptance which varies the terms of an offer works as a rejection of the offer. The implication of the argument was that no judgment should be entered (although it bears mention that Valley Bank never specifically requested, either in its memorandum or its oral argument, that the court not enter the judgment).

Addressing the question whether to enter judgment, we stated that we were entitled to take Shorter's acceptance at face value and that Rule 68 directs entry of judgment if an offer of judgment is accepted. We declined Valley Bank's counsel's invitations to decide at the hearing the validity of Shorter's acceptance. We also did not feel prepared to rule on the question of attorneys' fees. It was clear that the complexity of the questions necessitated more attention from counsel and the court than we could give them at the hearing. We directed the clerk to enter judgment for Shorter, but we worded the order to be silent as to attorneys' fees.[1] We invited Valley Bank to file within ten days a Rule 59(e) motion to vacate the judgment, and we gave Shorter ten days to present his bill of costs and a motion to include attorneys' fees in costs. *See* Transcript of Proceedings of April 9, 1987.

On April 17 Shorter filed his Motion for an Award of Attorneys' Fees and Costs and an accompanying memorandum. The motion and memorandum reiterated the arguments Shorter had raised in his emer-

---

1. The order read: "Judgment entered in favor of the plaintiff and against the defendant, Valley Bank & Trust Company, in the amount of $125,000 and costs accrued to date."

gency motion. On April 27 Valley Bank filed, with leave of court, a Motion to Clarify Judgment or in the Alternative to Alter the Judgment [Def.Mot. to Clarify] and a supporting memorandum. Valley Bank, too, forwarded arguments similar to those it had raised at the hearing on April 9. Valley Bank's motion asked "the court to clarify the judgment in the case entered on April 9, 1987, under Rule 59(e), or in the alternative, to alter the judgment to reflect that defendant's lump sum offer of $125,-000 under Rule 68 is inclusive of an amount for attorneys' fees." The motion did not ask us to vacate the April 9 judgment order, merely to interpret it or amend it in Valley Bank's favor. The parties have fully briefed the two motions, which are now ready for decision.

*Attorneys' Fees as Part of the $125,000 Judgment Entered Against Valley Bank*

■ Valley Bank's offer stated that it was "made pursuant to Rule 68." Rule 68 provides that a defendant may serve upon plaintiff an offer to allow judgment to be taken against defendant for a specified sum "with costs then accrued." If plaintiff accepts within ten days, either party may file the offer of judgment and acceptance "and thereupon the clerk shall enter judgment." If plaintiff does not timely accept and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." [2]

The Supreme Court considered the effect of Rule 68 in conjunction with a fee-shifting statute in *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), a case brought under 42 U.S.C. § 1983. A plaintiff who prevails in a § 1983 action may, in the court's discretion, obtain "a reasonable attorney's fee as part of the costs." 42

U.S.C. § 1988. Shorter and Valley Bank each rely heavily on their own interpretations of *Marek*, so a discussion of that case is in order.

The defendants in *Marek* made an offer of settlement "for a sum, including costs now accrued and attorney's fees, of ONE HUNDRED THOUSAND ($100,000) DOLLARS." Plaintiff did not accept the offer. At trial plaintiff was awarded $60,000 in damages. 473 U.S. at 3–4, 105 S.Ct. at 3014. Because the costs, including attorney's fees, which had accrued prior to the settlement offer amounted to $32,000, *id.* at 4, 105 S.Ct. at 3014, the $92,000 (which equals $60,000 plus $32,000) judgment (with costs) finally obtained by the plaintiff was not more favorable than defendants' $100,000 offer. Thus plaintiff was responsible for his own costs incurred after the making of the offer.

The Court addressed whether defendants' offer was valid under Rule 68. Plaintiff contended that because the rule mentions costs separately from the amount offered in settlement, an offer must recite separately the amount dedicated to each. Defendants' offer of a single lump sum was therefore invalid, plaintiff argued. The Court rejected plaintiff's contention, holding that the rule's phrase "offer to allow judgment ... with costs then accrued" means only that a valid Rule 68 offer may not exclude costs altogether. The rule does allow an offer which lumps costs together with other elements of the judgment. By allowing defendants to make offers which represent their total liability, the Court reasoned, its construction would further the rule's objective of encouraging settlement. *Id.* at 5–7, 105 S.Ct. at 3015–16.

---

**2.** Rule 68 read as follows in April 1987:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together

with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Fed.R.Civ.P. 68 (amendments effective August 1, 1987 not quoted).

Valley Bank tries to stretch this holding into a rule that a Rule 68 offer of judgment must be a lump sum offer; that is, an offer must represent defendant's liability for attorney's fees and costs as well as for the judgment. The holding will not stretch so far. Even if this section of the *Marek* opinion applied directly to attorney's fees as well as costs, the Court's interpretation of Rule 68 does not mandate lump sum offers; it merely permits them. The Court wrote:

> If defendants are not *allowed* to make lump sum offers that would, if accepted, represent their total liability, they would understandably be reluctant to make settlement offers.

*Id.* at 6–7, 105 S.Ct. at 3016 (emphasis added). But a defendant *may* make a settlement offer which does not account for attorney's fees, *see Evans v. Jeff D.*, 475 U.S. 717, 734, 106 S.Ct. 1531, 1541, 89 L.Ed. 2d 747 (1986), and the question at hand is whether Valley Bank has done so.

Valley Bank argues that it has. Although its offer did not mention attorneys' fees, Valley Bank notes that it used the word "sum" in its offer and it posits that "sum" carries the same meaning as "lump sum." Valley Bank states that it styled its offer after the one in *Marek*, which used the word "sum," not the phrase "lump sum," but was nevertheless deemed to include attorney's fees.

Valley Bank adopted the wrong phrase from the *Marek* offer. That offer included attorney's fees not because it used the word "sum," but because it used the phrase "including ... attorney's fees." "Sum" means "a quantity of money or currency." Black's Law Dictionary 1603 (revised 4th ed. 1968). There is nothing in the definition which suggests that an offer to pay a sum applies to the offeror's entire liability. The important word in the phrase "lump sum" is the first one, but "lump" does not appear in Valley Bank's offer. There is simply no merit to Valley Bank's contention that the language it used in its offer of judgment incorporated attorneys' fees into the $125,000 figure.

Even though its offer did not expressly include attorneys' fees, Valley Bank alternatively argues, Shorter (through his attorneys) understood that it did. Valley Bank invites us to review the negotiations between its counsel and Shorter's counsel which preceded Shorter's acceptance of the offer.

According to an affidavit submitted by Gerard Smetana, Valley Bank's counsel, Smetana informed Craig Anderson, Shorter's counsel, on March 31, 1987, of an offer to settle the case for $125,000. Smetana contends Anderson understood this offer included attorneys' fees. Affidavit of Gerard Smetana, attached to Def.Mot. to Clarify, at 3. After Anderson rejected the offer on April 2, Smetana served on him Valley Bank's offer of judgment, along with a cover letter which stated that the offer "is consistent with the final offer I made to you ... on March 31, 1987...." *Id.;* Def. Mot. to Clarify, Exhibit A. This scenario, from which Valley Bank concludes that it intended its offer to include attorneys' fees and that Anderson knew of its intention, forms the basis of Valley Bank's motion to have the court clarify or amend the judgment to reflect that the offer included attorneys' fees.

Were the agreement between the parties a simple contract, we might be inclined to consider the history of the negotiations. Ambiguous contract terms compel a court to look to extrinsic evidence, and it *might* fairly be said that the terms of Valley Bank's offer create an ambiguity as to Shorter's attorneys' fees.

But the arrangement here is not a simple contract; it involves an accepted offer of judgment, and there is a difference. Courts should be much more reluctant to conclude that an offer of judgment is ambiguous. If a common, garden-variety offer to contract is unclear, the offeree is free to reject the offer or attempt to clarify it. An offeree who accepts an ambiguous offer is in no position to complain if a court called upon to interpret the contract turns to extrinsic evidence. By contrast, a plaintiff who receives a Rule 68 offer is in a difficult position, because "a

Rule 68 offer has a binding effect when refused as well as when accepted." *Boorstein v. City of New York*, 107 F.R.D. 31, 34 (S.D.N.Y.1985). Unless the defendant allows the plaintiff to resolve or eliminate ambiguities, the plaintiff will be forced to guess whether and how the court would interpret the extrinsic evidence. Adherence to the language of the offer whenever possible alleviates this unfairness to the plaintiff. *Cf. Grosvenor v. Brienen*, 801 F.2d 944, 949 (7th Cir.1986) ("It would be ill-advised" to treat an oral offer made at a settlement conference as a Rule 68 offer of judgment and thereby "impose the risk on a plaintiff of the ambiguity of an oral offer.").

We doubt that even under ordinary contract principles we would find it appropriate to contemplate extrinsic evidence in order to give meaning to the terms of Valley Bank's offer. *Cf. Greenwood v. Stevenson*, 88 F.R.D. 225, 230 (D.R.I.1980) ("[T]he Court is willing to believe that defendants may not have subjectively intended to offer attorney's fees [in their offer of judgment]. It is well-settled, however, that when contracting parties use terms of art, they will be deemed to have 'intended' the full legal meaning of those words."). We have no doubt that to modify Valley Bank's written Rule 68 offer in its favor on the basis of such evidence would be improper. The offer was what the written offer said, and it said nothing which terminated any liability Valley Bank may have had (and may still have) for Shorter's attorneys' fees.

*Rescission of the Offer and Acceptance*

█ Although modification of the written offer is not proper, Smetana's account suggests that rescission might be. If it were clear that Valley Bank's "counsel mistakenly used the word ['sum'] as a shorthand to include attorney's fees," and "the mistake was known to" Shorter, rescission of the offer might be justified "where the offeree refuses to let the mistake be corrected when discovered by the offeror and communicated to the offeree." *Fisher v. Stolaruk Corp.*, 110 F.R.D. 74, 76 (E.D. Mich.1986). In *Fisher*, on facts similar to those alleged by Valley Bank in its motion,

the court allowed defendant to withdraw its Rule 68 offer of judgment. Valley Bank cites *Fisher* and other cases which imply that Valley Bank should be allowed to rescind its offer either because it made a "mistake of law" or because it did not reach a "meeting of the minds" with Shorter.

One critical fact distinguishes this case from those: Valley Bank has not sought rescission. It moved merely to clarify or alter the judgment. Valley Bank knew at least as early as the hearing on April 9 of the alleged lack of a meeting of the minds. Had Valley Bank wished, it could then have accepted our invitation to move to vacate the judgment. Instead it chose to undertake to convince us of its interpretation of the offer and Rule 68. (Not even the section of Valley Bank's memorandum entitled "AN OFFER OF JUDGMENT ACCEPTED ON TERMS OTHER THAN THE OFFER OPERATES AS A REJECTION OF THE OFFER" proposes to nullify the accord completely. Def.Mot. to Clarify at 10–13. *See also* Defendant's Reply to Plaintiff's Response to Motion to Clarify Judgment or in the Alternative to Alter the Judgment at 7.) It is evident that Valley Bank had no desire to reopen the merits of the lawsuit. It wants the judgment to stand with Shorter paying his own fees.

*Attorneys' Fees as Part of Shorter's Costs*

█ While Valley Bank argues that Shorter's attorneys' fees were part of the judgment, Shorter pushes to the opposite extreme. He argues that his fees—those incurred before Valley Bank's offer—were part of the "costs" which Valley Bank offered to pay. He bases his argument on the second half of the *Marek* opinion.

The *Marek* Court also addressed the question "whether the term 'costs' in Rule 68 includes attorney's fees awardable under 42 U.S.C. § 1988." 473 U.S. at 7, 105 S.Ct. at 3016. Since plaintiff was responsible for his own post-offer costs, if "costs" included his attorney's fees, then he was not entitled to shift to defendants any of his post-offer fees. The Court held that Rule 68 costs do include § 1988 fees be-

cause § 1988 awards attorney's fees "as part of costs."

> [T]he term "costs" in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority. In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68 "costs." Thus, absent congressional expressions to the contrary, where the underlying statute defines "costs" to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68.

*Id.* at 9, 105 S.Ct. at 3017. Plaintiff therefore could not recover his post-offer fees.

Shorter reads this section of *Marek* as a "clear . . . pronouncement" that "the term 'costs' includes attorneys' fees under Rule 68 unless the underlying statute governing the pending action does not include discretionary or mandatory attorneys' fees." Memorandum in Support of Plaintiff's Motion for Attorneys' Fees and Costs at 2. The relevance of *Marek*'s interpretation of Rule 68 "costs" is not as obvious as Shorter assumes. Valley Bank's offer, not Rule 68, dictates the extent of Valley Bank's liability to Shorter. The real question is the meaning of "costs" in the offer. But it is clear that Valley Bank intended "costs" to have the same meaning in its offer as in Rule 68: not only did the offer purport to be made pursuant to Rule 68, but its phrasing mirrors the rule's language. Because both parties believed that the offer adopted the meaning of Rule 68 costs, it did. *Marek*'s disquisition of Rule 68 therefore applies to Valley Bank's offer.

Shorter's characterization of the opinion overlooks the reasoning behind the holding. Section 1988 fees are Rule 68 costs *because the statute defines the fees as costs.* The FLSA defines fees differently, and therefore the precise holding in *Marek* does not apply to the case at hand. Most of the cases which Shorter cites are similarly distinguishable because they involve statutes which define fees as costs. *See Grosvenor v. Brienen*, 801 F.2d 944, 948 (7th Cir.1986) (42 U.S.C. § 1988); *Fulps v. City of Springfield*, 715 F.2d 1088 (6th Cir.1983)

(42 U.S.C. § 1988); and *Rohrer v. Slatile Roofing & Sheet Metal Co.*, 655 F.Supp. 736 (N.D.Ind.1987) (42 U.S.C. §§ 1988, 2000e).

Furthermore, the literal approach of *Marek*'s holding implies its inverse: attorney's fees are not Rule 68 costs if the underlying statute does not award them as costs. Justice Brennan, dissenting in *Marek*, so interpreted the majority's holding. *Marek*, 473 U.S. at 23, 105 S.Ct. at 3024–25 (Brennan, J., dissenting); *see also Fisher v. Stolaruk Corp.*, 110 F.R.D. 74 (E.D.Mich.1986). *Tyler v. Meola*, 113 F.R.D. 184, 186 (N.D.Ohio 1986), which is to the contrary, does not persuade us otherwise, because, as does Shorter, it fails to focus on the distinction between fee-shifting statutes which define fees as costs and those which do not. Because the FLSA does not define attorney's fees as costs, they are not costs for purposes of Rule 68, or, by implicit incorporation, for purposes of Valley Bank's offer of judgment.

To sum up, Valley Bank's offer of judgment was silent as to Shorter's attorneys' fees. They were not included in either the $125,000 sum Valley Bank offered in judgment or the costs Valley Bank is obligated to pay.

*Attorneys' Fees Under the FLSA*

Shorter forwards a second ground upon which he seeks to recover his attorneys' fees from Valley Bank. As noted above, the ADEA incorporates the fee-shifting provision of the FLSA, which states that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant." 29 U.S.C.A. § 216(b) (West Supp.1987).

The statute's use of the word "shall" "make[s] fee awards mandatory for prevailing plaintiffs." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 & n. 5, 98 S.Ct. 694, 697 & n. 5, 54 L.Ed.2d 648 (1978); *see also Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 86 (2d Cir.1983). The amount of the award is within the sound discretion of the trial court. *Hodgson v. Miller Brewing Company*, 457 F.2d 221, 228 (7th Cir.1972).

Valley Bank hints that the present case falls outside the ambit of the statute because Shorter obtained a "settlement" rather than a "judgment." This is simply not true. Rule 68 mandates entry of judgment upon proof of acceptance of an offer of judgment. This court directed the clerk to enter judgment at the hearing on April 9, and the clerk did so. Shorter is now entitled to a reasonable attorney's fee in addition. Furthermore, Shorter deserves to recover fees for the time his lawyers spent on his case after the entry of judgment, and it is within our discretion to award them. *Independence Tube Corp. v. Copperweld Corp.*, 543 F.Supp. 706, 715–16 (N.D.Ill.), *rev'd on other grounds*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984).

*Reasonable Attorneys' Fees*

■ In *Lenard v. Argento*, 808 F.2d 1242 (7th Cir.1987), the Seventh Circuit wrote that a reasonable attorney's fee "means a fee large enough to induce competent counsel to handle the plaintiff's case, but no larger." *Id.* at 1247. The statement referred to an award of fees under 42 U.S.C. § 1988, but interpretations of § 1988 and other fee-shifting statutes apply generally to the present case. As the court noted in *Jones v. Central Soya Co.*, 748 F.2d 586 (11th Cir.1984), an ADEA case,

> In *Hensley v. Eckerhart*, 461 U.S. 424, 433 [n. 7] [103 S.Ct. 1933, 1939 [n. 7], 76 L.Ed.2d 40] (1983), a case addressing the reasonableness of an award of attorney's fees under section 1988, the Supreme Court stated that the "standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of [attorney's] fees to a 'prevailing party.'" Accordingly, our inquiry extends beyond just those cases dealing with section 216(b).

*Id.* at 589 n. 1.

We seek to determine the rate that a hypothetical, vibrant market would place on counsel's services. *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir.1986). The Supreme Court instructed in *Hensley* that:

> [t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

461 U.S. at 433, 103 S.Ct. at 1939. Another starting point might be the judgment. Shorter retained his lawyers on a contingent-fee basis, and their arrangement might more accurately "simulate the results that would obtain if the lawyer[s] were dealing with a paying client." *Kirchoff*, 786 F.2d at 323. That Shorter and his counsel entered into a contingent-fee contract is undoubtedly "relevant to the district judge's decision on how large a fee to award." *Lenard*, 808 F.2d at 1247.

In the absence of the fee-shifting statute, Shorter would be a paying client, for under the contract he would owe his attorneys one-third of the $125,000 judgment, or about $42,000, plus costs and expenses. Valley Bank, after citing the relevant precedent, suggests that this indicates the "market rate." (Actually, in a fit of overzealousness Valley Bank asks us to take the $42,000 figure as a preliminary "benchmark" and then reduce it for time unreasonably spent by Shorter's counsel. Valley Bank does not explain how the expenditure of hours has anything to do with a number calculated mechanically as a percentage of the judgment.)

But we must be alert to forces which tend to drive an actual contract away from the hypothetical market rate. A victim of age discrimination may not be in a position to offer counsel full compensation. "The existence of a contingent fee contract cannot be conclusive evidence of what a reasonable fee is, because the plaintiff's lawyer might not have been willing to take the case on the terms set forth in the contract except for the hope of some additional award under" the FLSA. *Lenard*, 808 F.2d at 1247. Indeed, a presumption that plaintiffs cannot afford to pay market rates underpins the civil rights fee-shifting statutes.

The presumption is rebuttable. Sometimes a plaintiff knows at the outset that

he has a high likelihood of a substantial recovery on his claims. "[N]o one thinks that persons with such claims cannot obtain adequate representation on a contingent fee basis," regardless of the nature of the case. *Id.* at 1248. In such a case the retainer agreement may fully remunerate counsel.

In fact, under such circumstances the actual contract may overcompensate counsel. If the plaintiff and his attorneys are reasonably certain at the time they sign a retainer that plaintiff will obtain a favorable judgment under the ADEA, the attorneys' incentive to inflate the fee goes unchecked. "[I]n negotiating a contract such as this, [plaintiff is] dickering about the defendants' money, not [his] own." *Kirchoff,* 786 F.2d at 323. In this market, the seller may name the price.

A court can hold this upward pressure on fees in check when an ADEA case closely resembles ordinary wrongful discharge actions. The retainers customarily used in common-law discharge actions may show generally what a market uninfluenced by the fee-shifting statute would produce in a similar ADEA case. If the ADEA plaintiff and his attorneys have entered into a contract designed to soak the defendant, their contract will differ noticeably from those in sure-winner wrongful discharge actions. The *Lenard* court drew much the same conclusion about § 1983 actions:

> The district judge ... might have concluded that this was the kind of civil rights case where it is evident from the start that the plaintiff has a solid claim for substantial damages—the kind of civil rights case that resembles an ordinary tort case, conventionally and satisfactorily handled on a contingent fee basis. In that event (though not otherwise) the fee set in the contingent fee contract would have been presumptively adequate to attract competent counsel.

808 F.2d at 1247. Of course, the arrangement actually devised by plaintiff and his counsel is presumptively correct only if it mirrors the arrangements typically reached in lawsuits involving the analogous common-law tort.

Even if sure-winner ADEA cases exist—and we have never presided over any—Shorter's was not one of them. Assuming Shorter could have proved at trial his prima facie case of discrimination, often a straightforward task, the burden would have shifted to Valley Bank to produce evidence of a legitimate, non-discriminatory reason for discharge. *Bechold v. IGW Systems, Inc.,* 817 F.2d 1282, 1284 (7th Cir. 1987). But "the ultimate burden of persuasion regarding discriminatory intent [would have] remai[ned] at all times with" Shorter. *Id.* at 1285. In fact Valley Bank intended to defend itself by proving that Shorter performed his job unsatisfactorily, and it had more than a modicum of evidence in support. *See* Defendant's Trial Brief *passim.*

Under these circumstances, we cannot say that, in the words of *Lenard,* this was the kind of civil rights case where it was evident from the start that the plaintiff had a solid claim for substantial damages. Often it is difficult to predict even at trial whether a jury will believe that an employer's non-discriminatory reason for discharge was legitimate or merely a pretext. Shorter and his counsel could not have known before discovery how his case would shape up.

Thus we do not consider the contingent-fee contract between Shorter and his counsel an accurate barometer of an appropriate award of attorneys' fees. The hours-multiplied-by-rate method of *Hensley* provides a more reliable approach. Nevertheless, we do take comfort that the contingent-fee figure of $42,000 is in the same ballpark as the result under the *Hensley* approach, discussed presently, of $50,295 in fees accrued to the offer of judgment. (The post-offer fees in this case, for time spent securing a fee award, have no analog in the contingent-fee setting.)

*Rates*

■ Shorter's legal work was performed by attorneys Lowell Jacobson and Craig Anderson and by Charles Corrigan, a third-year law student working as a paralegal in Jacobson's and Anderson's law firm. Shorter's fee petition seeks to recover $150

for each hour of the attorneys' time. In affidavits attached to the motion for fees and costs, Jacobson and Anderson each declare that $150 is his customary hourly rate. Valley Bank responds that it believes $100 is more reasonable, but it submits no affidavits or other evidence. Based on the record before us and our knowledge of rates charged in the Chicago area for this type of litigation, we conclude that $150 per hour is a reasonable rate for time spent by Jacobson and Anderson.

▪ The fee petition seeks $40 per hour for the time of the paralegal. Shorter is entitled to compensation for "paralegal time reasonably expended on the case" in addition to the lawyers' time. *Spanish Action Committee of Chicago v. City of Chicago*, 811 F.2d 1129, 1138 (7th Cir.1987). Paralegals are cheaper than lawyers, and a rule prohibiting recovery for paralegal time might discourage "cost-effective delivery of legal services." *Id.*

Valley Bank argues that "[a]t most, the paralegal's time should be chargeable at $30 per hour as it was recently determined to be the Chicago market rate this year in *Spanish Action Comm.*" Defendant's Response in Opposition to Plaintiff's Supplemental Motion for an Award of Attorneys' Fees and Costs from April 3, 1987 to Date, at 5. While the appellate decision in that case came down this year, the paralegal worked in 1984 and earlier. Corrigan worked for Shorter's lawyers in 1987, and $40 is a reasonable rate.

*Hours Spent Before the Offer of Judgment*

Plaintiff's Motion for an Award of Attorneys' Fees and Costs, which Shorter filed April 17, 1987, seeks recovery only for legal work performed through April 2, 1987, the date of the offer of judgment. We examine this now. Shorter subsequently filed a supplemental motion for fees, seeking recovery for legal work performed after April 2. We will consider the supplemental motion presently.

The initial fee petition states that Jacobson spent 197.75 hours through April 2; Anderson, 162.55 hours. Counsel have attached to the petition copies of their apparently contemporaneous time records.

Valley Bank contests the requested number of hours on three grounds. First, it finds Jacobson's handwritten records "at best, illegible," and Anderson's records "somewhat legible, but incomprehensible because of its abbreviations." Defendant's Response in Opposition to Plaintiff's Motion for an Award of Attorneys' Fees and Costs [Def.Resp.] at 12. We had less trouble. While it took a while to decipher Jacobson's chicken scratches, we can read them. As for the abbreviations, some strike us as perfectly obvious—"Mo" for motion, "Rev" for review, "wk" for work; some are explained in the legend on the timesheet—"C" for conference; and some become apparent after a moment's reflection—"RS" for Richard Shorter; "DS" for Dick Shorter; "ct app" for court appearance. Only a very few remain a mystery.

Second, Valley Bank objects to duplication of attorneys' time. It charges "plaintiff double teamed the case with two attorneys who attended all the depositions, every routine status call and motions argument during the pendency of the case." Def.Resp. at 10. If this is true, Shorter's counsel are to be commended for striking duplicative time from the fee petition. The records they submitted show Anderson in court seven times (before April 2, 1987)—on January 14, March 27, June 2 and 5, July 3, and September 2 and 8. Jacobson was in court seven times also—on May 27, June 5, July 3, 28, and 31, September 8, and December 12. (All these dates were in 1986). Only three of Anderson's appearances coincided with Jacobson's, and two of those were for pretrial conferences.

▪ As for depositions, it does appear that both of Shorter's attorneys attended every one, to the tune of about fifty hours apiece. Neither party discloses the nature of these depositions, so we cannot determine if the presence of two counsel was reasonable. We feel both sides have neglected their duty to inform the court, so we split the difference and excise half the time spent by the second lawyer, or 25 hours.

■ Third, Valley Bank points out that Shorter cannot recover for time devoted to unsuccessful claims. But plaintiff's one-count complaint contained only the single claim for violation of the ADEA. Valley Bank argues that Shorter did not obtain complete relief, for the $125,000 judgment was less than Shorter would have recovered if he received double damages by proving a willful violation of the statute. We need not undertake the uninviting task of evaluating the factual predicate to Valley Bank's argument, for certainly Shorter's claims for single damages and double damages involved a common core of facts and were based on related legal theories. *See Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. Hours spent developing a case of "willfulness" were not "distinct in all respects from" the remainder of the case. *Id.* at 440, 103 S.Ct. at 1943. Indeed, they were probably the engine which drove Valley Bank to settlement. Shorter should receive compensation for them.

■ It is incumbent upon the court to determine the reasonableness of the total number of hours expended on the case. The fee petition asks for 360.30 for the period up to April 2. We have already cut out 25, leaving 335.30.

This figure is reasonable. The case was ready for trial and trial was imminent when it was settled. Discovery in the case did not run smoothly. Shorter filed two motions to compel discovery, which were granted. While the parties dickered over documents, the meter ran. Unfortunately for Valley Bank, it must now pick up the tab. Jacobson and Anderson also spent a large chunk of time on the case just before the September 22, 1986 trial date. (That date was postponed to April 13, 1987 because of the illness of one of plaintiff's lawyers.) Trial preparation often requires many hours.

*Hours Spent After the Offer of Judgment*

Shorter's supplemental fee petition seeks recovery for time his lawyers spent after April 2, 1987. It states that Jacobson spent 61.75 hours; Anderson, 32 hours; and the paralegal, 69.25 hours.

■ Time that the lawyers spent in court, both to secure the judgment for Shorter (April 9) and to argue for their fees and against modifying the judgment (April 27), is fully recoverable. This amounts to 13 hours. So is the time spent preparing for these court appearances, another 2 hours. We do not agree with Valley Bank's suggestion that the appearance of both lawyers at the hearings was duplicative. *Cf. Lenard*, 808 F.2d at 1245. Recovery for the time spent in court by the law-student paralegal, who, needless to say, is not a member of the Northern District bar, would be duplicative. The cost of his education should be borne by the plaintiff's law firm.

Jacobson and Anderson spent a total of 19 hours researching and writing the self-styled "emergency" motion they submitted on April 8. Their paralegal spent 4 hours on it. These amounts are reasonable.

■ The firm spent another 17.5 hours on its Motion for Attorneys' Fees and Costs and memorandum in support, submitted April 17. We cannot conceive how it consumed all that time. With a few minor exceptions, the memorandum is the same *verbatim* as the emergency motion submitted ten days earlier. No doubt the lawyers spent some time compiling their time records. In fact, notations on Jacobson's time sheets say as much. But in our experience most lawyers do not bill their fee-paying clients for hours spent preparing bills. It would be unreasonable to pass such costs on to Valley Bank. From the materials submitted by Shorter's lawyers we cannot identify the hours reasonably spent preparing this motion and memorandum; in any event they cannot amount to much. We do not allow plaintiff to recover for any time spent on these papers.

From April 17 to May 29, Shorter's lawyers prepared and submitted a response to defendant's motion to clarify or amend and a reply memorandum on plaintiff's motion for fees and costs (along with a supplemental petition for fees). The firm also worked on a few minor filings, such as a motion for an extension of time. On these matters counsel spent 45.25 hours.

This strikes us as a reasonable amount of time. Certainly most of this time was spent on the two larger pieces of work—the response memorandum and the reply memorandum. It amounts to about twice what was spent on the "emergency" motion for fees. While these tasks probably required less research than the "emergency" motion, because the lawyers presumably had already uncovered and read most of the relevant case law, the lawyers also tackled the relatively time-consuming writing task of refuting their opponent's arguments.

During the same six weeks their paralegal chalked up another 65.75 hours working on the same matters. Almost three hours of this time was spent filing, delivering, and picking up briefs. We cannot imagine that counsel bill their paying clients $40 per hour for messenger service. In this regard, we are disappointed that the supplemental fee petition does not evidence the exercise of "billing judgment" incumbent upon counsel. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).

The paralegal devoted the remainder of his time to preparing the response and reply memoranda. As noted above, the Seventh Circuit allows recovery for paralegal time to promote the efficient use of legal services. Efficiency can be achieved, however, only if the paralegal's work supplants work that an attorney would otherwise do. In this case, despite sixty hours of the paralegal's work (most of which was devoted to drafting, not research), the lawyers spent another forty-five hours finishing the two jobs. Under these circumstances we conclude the paralegal's time on the matters was not reasonably expended and we deny recovery for it.

### Costs

Shorter seeks to recover $3,838.12 in costs. Valley Bank contends that this figure includes items for which Shorter may not recover because they are not compensable under 28 U.S.C. § 1920.

The extent of Valley Bank's liability for Shorter's costs derives not from § 1920 but from the offer of judgment, in which Valley Bank offered (on April 2) to pay "costs accrued to this date." As discussed above, we conclude that both parties read into the term "costs" the meaning it carries in Rule 68.

We turn again to the Supreme Court's holding in *Marek*. Rule 68 costs include all costs "properly awardable under the relevant substantive statute." 473 U.S. at 9, 105 S.Ct. at 3017. Costs under fee-shifting statutes such as the FLSA include all reasonable out-of-pocket expenditures. *Zabkowicz v. West Bend Co.*, 789 F.2d 540, 553 (7th Cir.1986); *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir.1984); *Monroe v. United Air Lines, Inc.*, 565 F.Supp. 274, 280 (N.D.Ill.1983), *rev'd on other grounds*, 736 F.2d 394 (7th Cir.1984).

With two exceptions, all the items listed on Shorter's bill of costs appear reasonable. First, as Valley Bank points out, Shorter's total of $922.82 for photocopying counts a bill for $10.82 twice. The correct sum for photocopying is $912.00.

Second, Shorter seeks recompense for certain costs accrued after April 2. Shorter paid a private process server $216.50 for service of subpoenas on three witnesses, and another $150.00 for their witness fees (which were advanced by the process server). According to the invoice, service was attempted on April 6 and April 7. Shorter contends that the expenses were incurred on April 2, presumably because his lawyers placed an order with the process server on that date. Valley Bank responds that Shorter could have cancelled the order upon receipt of the offer of judgment. Whether or not it would have been reasonable for Shorter to cancel the order, none of these costs accrued before the process server actually fulfilled its obligation to attempt service. Thus they accrued after the date of the offer and are not taxable to Valley Bank.

The remaining $3460.80 appears to be for reasonable out-of-pocket expenditures. Most of it, $2379.80, covers copies of deposition transcripts of witnesses who

probably would have been called at trial. Other copying costs amounted to $912.00. We do not agree with Valley Bank that each photocopying invoice must indicate what documents were copied; all of them are identified to this lawsuit, and the total amount is not excessive. Other expenses consisted of the $60 filing fee, the cost of service of summons and the complaint ($19), and another $90 in witness fees, items which Valley Bank does not challenge.

In conclusion, we award plaintiff $62,-342.50 as fees (335.30 × $150 = $50,295 [pre 4/2/87], plus 79.25 × $150 = $11,-887.50 plus 4 × $40 = $160 [post 4/2/87]) and $3460.80 as costs and expenses.

## ORDER

Judgment will enter in favor of plaintiff Richard Shorter and against defendant Valley Bank and Trust Company in the amount of $65,803.30 as and for attorneys' fees, costs and expenses, the judgment to be paid to plaintiff's counsel Jacobson, Brandvik and Anderson.