Ronald J. **RADECKI** and Radecki's Service, Inc., a Minnesota corporation, Appellees,

v.

**AMOCO OIL COMPANY,** a Maryland corporation, Appellant.

No. 87–5253.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1988.

Decided Sept. 23, 1988.

See also 643 F.Supp. 1393.

Ernest Reveal, Minneapolis, Minn., for appellant.

Wayne A. Hergott, Minneapolis, Minn., for appellees.

Before BOWMAN, Circuit Judge, FAIRCHILD,* Senior Circuit Judge, and MAGILL, Circuit Judge.

BOWMAN, Circuit Judge.

Amoco Oil Company (Amoco) appeals from a District Court judgment in favor of appellees, Ronald J. Radecki and Radecki's Service, Inc. (Radecki). Amoco contends that the District Court erred both by entering judgment for Radecki pursuant to Amoco's Fed.R.Civ.P. 68 offer of judgment and by awarding attorney fees. We agree and reverse.

I.

Radecki brought the present suit against Amoco on April 20, 1983. Invoking the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 et seq., Radecki sought to compel Amoco to renew the Radecki franchise agreement without including a provision Amoco wanted that would have called for converting the "full-service" station to a "pumper," or, alternatively, to compel Amoco to sell the station to Radecki.

In the fall of 1986, shortly before the suit was scheduled to go to trial, the parties

---

* The HONORABLE THOMAS E. FAIRCHILD, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

conducted settlement negotiations. Radecki was represented by Wayne Hergott and his co-counsel Patrick Flaherty; Amoco was represented by Dale Larson and his co-counsel Rita McConnell, along with Amoco in-house attorney Maurice Glover. At the end of the last settlement conference, the parties were close to settlement. Amoco was offering $600,000 plus non-cash considerations to settle the case, and Radecki was demanding $675,000 plus the non-cash considerations. The parties understood that the amounts offered and demanded were to cover all of Amoco's potential liability, including any liability for costs and attorney fees. The negotiations ended without the parties reaching a settlement.

A few days later, on November 18, 1986, Amoco served on Radecki a formal offer of judgment pursuant to Rule 68 of the Fed. R.Civ.P.[1] The offer stated: "PLEASE TAKE NOTICE that, pursuant to Rule 68 of the Federal Rules of Civil Procedure, defendant, Amoco Oil Company, hereby offers to allow judgment [to] be taken against it in the amount of $525,000.00, including costs now accrued." Joint Appendix (App.) at 173. The next day, Amoco served Radecki with a second offer of judgment that differed from the first only in that it stated explicitly that the amount offered was inclusive of attorney fees. In a telephone conversation on November 20, 1986, McConnell informed Hergott that Amoco's second offer was intended to clarify the first and that Amoco was tendering the $525,000 offer of judgment with the understanding that the amount offered included any liability for attorney fees. Her-

gott understood then, if not before, that the offer of judgment Amoco wanted on the table was for $525,000, inclusive of attorney fees. As the end of the ten-day period for accepting the offer approached, Radecki simultaneously filed an "Acceptance of Judgment" (purporting to accept the November 18 offer) and a motion for attorney and expert witness fees.

The District Court determined that "Amoco could not properly withdraw or clarify its offer of November 18," held that Radecki's purported acceptance of the offer was effective, and found that the $525,000 sum offered did not subsume attorney fees. Thus, on February 25, 1987, the District Court ordered judgment entered for Radecki "in the amount of $525,000, including costs now accrued" and, pursuant to the PMPA, 15 U.S.C. § 2805(d)(1)(C), awarded Radecki an additional $229,887.29 in attorney fees. Amoco's subsequent motions were denied, and in an order dated May 13, 1987, the District Court confirmed its February 25, 1987 order. Amoco brought this appeal contending, *inter alia*, that the District Court should not have held that Radecki's acceptance was effective and should not have awarded attorney fees.

## II.

This case involves application of the contract principles of offer and acceptance to a Rule 68 offer of judgment. Rule 68 allows a defendant to make an offer to a plaintiff whereby, upon acceptance, judgment will be taken against the defendant for a specified sum "with costs then accrued." Fed.

1. Rule 68 provides:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally ob-

tained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

R.Civ.P. 68. The primary issue here is whether Radecki accepted Amoco's Rule 68 offer of judgment.

■ To decide whether there has been a valid offer and acceptance for purposes of Rule 68, courts apply the principles of contract law. *See, e.g., Johnson v. University College of the Univ. of Alabama,* 706 F.2d 1205, 1209 (11th Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983); *Adams v. Wolff,* 110 F.R.D. 291, 293 (D.Nev.1986); *Bentley v. Bolger,* 110 F.R.D. 108, 113–14 (C.D.Ill.1986); *Boorstein v. City of New York,* 107 F.R.D. 31, 34 (S.D.N.Y.1985). Under basic contract law principles, for an offer and acceptance to create a binding agreement there must be an objective manifestation of mutual assent, *i.e.,* what is often referred to (somewhat misleadingly) as a "meeting of the minds," *see* 1 A. Corbin, Corbin on Contracts § 107, at 478–79 (1963); this principle applies to Rule 68 offers and acceptances. *See, e.g., Johnson,* 706 F.2d at 1209; *Adams,* 110 F.R.D. at 293; *Boorstein,* 107 F.R.D. at 33–34; *Greenwood v. Stevenson,* 88 F.R.D. 225, 229–30 (D.R.I. 1980).

Whether there has been mutual assent between the parties in this case depends in part on the disputed issue of what Amoco offered. In dispute is whether the $525,-000 Amoco tendered in its November 18 offer was intended to include attorney fees.

Amoco argues that attorney fees were included, Radecki contends they were not. A finding that attorney fees were not included supports Radecki's position that its purported acceptance was effective, and vice versa. *See infra* p. 403. The offer itself makes no mention of attorney fees, yet it seems to contemplate that acceptance of the offer will fully resolve Amoco's liability; the offer appears to be a lump-sum offer, even subsuming within the amount offered any liability for "costs." [2] (The offer states that the amount offered "includes" costs rather than stating "plus" or "and" costs.) *See Chesny v. Marek,* 720 F.2d 474, 476 (7th Cir.1983), *rev'd on other grounds,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). Because the offer is silent with respect to attorney fees, we resort to factors outside the words themselves to determine whether Amoco intended the offered sum of $525,000 to subsume attorney fees.[3]

The District Court found that Amoco did not intend to include attorney fees in its November 18 offer. The District Court states: "An award of fees ... differs in both nature and effect from a judgment on the merits. Thus, the court concludes that the offer of judgment of November 18, 1986 was not intended to include attorneys' and expert witness' [sic] fees as part of the judgment Amoco offered." App. at 226 (citation omitted). That, of course, is a non

**2.** In *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), the Supreme Court considered the meaning of "costs" in Rule 68. The Court said that attorney fees would be included as costs for purposes of Rule 68 where the underlying statute in the action defined "costs" to include attorney fees. This approach seems to imply that attorney fees are not part of Rule 68 costs if the underlying statute does not define them as part of costs. Justice Brennan, dissenting in *Marek,* so interpreted the majority's holding and other courts have as well. *See Marek,* 473 U.S. at 23, 105 S.Ct. at 3023 (Brennan, J., dissenting); *Shorter v. Valley Bank & Trust Co.,* 678 F.Supp. 714, 721 (N.D.Ill.1988); *Fisher v. Stolaruk Corp.,* 110 F.R.D. 74 (E.D.Mich.1986). In the case before us, the underlying statute does not define attorney fees as part of costs. *See* PMPA, 15 U.S.C. § 2805(d)(1). We therefore do not hold that Amoco's offer of judgment included attorney fees by its reference to "costs." But neither can we accept the proposi-

tion that the offer's specific reference to costs (but not attorney fees) shows that Amoco intended to exclude attorney fees from the scope of the offer. By mentioning costs, the offer simply tracks the language of Rule 68. *See* Fed.R.Civ.P. 68; 4 R. Meisenholder, West's Federal Forms § 5391 at 635–37 (1982); *see also Marek,* 473 U.S. at 6, 105 S.Ct. at 3015 ("[I]f the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of [Rule 68] to include in its judgment an additional amount which in its discretion it determines to be sufficient to cover the costs." (citation omitted)).

**3.** Radecki's assertion that the November 18 offer was "clear," Brief for Radecki at 22, is belied by Hergott's admission that when he received the offer he could not tell from its face whether attorney fees were included in the offer and by the fact that his firm launched a research effort to resolve the issue.

sequitur. Perhaps the District Court's conclusion is based on its belief that "McConnell was unaware of the status of the [settlement] negotiations" when she drafted the offer. App. at 223. But the District Court does not cite, nor have we found, anything in the record to support that belief. To the contrary, McConnell had every reason to know the parties' positions since she personally attended the settlement negotiations as a representative of Amoco. As she explains in her affidavit, she knew of Amoco's last offer and Radecki's last demand during the final settlement conference and, consistent with the settlement discussions, intended the November 18 offer to be a lump-sum amount inclusive of attorney fees.

■ Consistent with its purpose of promoting settlements, Rule 68 allows defendants to make lump-sum offers that are inclusive of attorney fees. "If defendants [were] not allowed to make lump-sum offers that would, if accepted, represent their total liability, they would understandably be reluctant to make settlement offers." *Marek v. Chesny*, 473 U.S. 1, 6–7, 105 S.Ct. 3012, 3015–16, 87 L.Ed.2d 1 (1985). *See Delta Air Lines v. August*, 450 U.S. 346, 379 n. 5, 101 S.Ct. 1146, 1163 n. 5, 67 L.Ed.2d 287 (1981) (Rehnquist, J., dissenting) ("Were we to hold that attorney's fees were *not* subject to settlement and compromise (in the same way as the issues of liability, damages, and other remedies) as a part of a Rule 68 offer, we would frustrate the purpose of [Rule 68].") (emphasis in original); *see also Evans v. Jeff D.*, 475 U.S. 717, 732–34, 106 S.Ct. 1531, 1540–41, 89 L.Ed.2d 747 (1986) (citing *Marek*). Moreover, Rule 68 does not require a laundry list of the elements of relief included within an offer or specific mention of attorney fees, and it runs counter to the purpose of Rule 68 to assume that forms of relief not mentioned are not intended to be included within the sum offered. Rule 68 is designed to encourage complete settlement, not simply to resolve the issues of liability and remedies.

■ Here, the evidence as a whole strongly supports the view that Amoco intended to include attorney fees within the amount specified in its initial offer of November 18. First, the settlement amounts discussed during negotiations consistently had been inclusive of attorney fees. McConnell therefore was surprised when Hergott told her he might take the position that attorney fees were not subsumed in the amount tendered in the November 18 offer of judgment. Second, the November 19 offer appears to be a clarification rather than a modification of the November 18 offer. The "revised" offer followed right on the heels of the first, with no apparent intervening event to cause Amoco to change the terms of its offer. Radecki provides no explanation why Amoco would want to modify on November 19 what it offered on November 18, but simply says Amoco "for some reason ... changed its mind." Brief for Radecki at 24. Amoco, on the other hand, persuasively explains that the reason for the follow-up was the need to clarify the ambiguous offer. Third, the wording of the November 18 offer suggests that Amoco intended to proffer a lump sum amount that would, if accepted, represent its total liability. Not even "costs" were left to the discretion of the District Court. It thus seems very unlikely that Amoco would have been willing to make a binding offer that left it exposed to liability for attorney fees in whatever amount the District Court might fix, especially since Amoco was aware that Radecki claimed to have attorney fees of approximately $300,000. Fourth, it is clear that under the relevant section of the PMPA (15 U.S.C. § 2805(d)(1)(C)) an award of attorney fees to a prevailing franchisee recovering more than nominal damages is mandatory. Hence, there could not have been any doubt that Radecki would be entitled to attorney fees as part of his recovery and it follows that Amoco would try to limit its exposure to such a significant portion of its total potential liability by including attorney fees in the amount offered. Fifth, Amoco understood that Radecki was demanding actual and punitive damages totaling $375,000 and that the rest of Radecki's $675,000 settlement demand (exclusive of non-cash considerations) consisted

of attorney fees. Radecki fails to explain why Amoco would make an offer of judgment exceeding by $150,000 what it perceived as Radecki's demand for damages if the amount were not intended to include attorney fees. Amoco's explanation, of course, is that the amount offered was intended to include attorney fees.

Radecki argues that because the amount of the offer of judgment was "substantially below" the amount of the last settlement offer, this "suggests that there was no intention to include attorney fees." Brief for Radecki at 14. As a corollary, Radecki contends that Amoco was "gambling" that the District Court would award attorney fees that, combined with the $525,000 offered, would be no more than what Amoco had offered in the settlement negotiations. Radecki calculates that a fee award of less than $145,000 would have made the gamble pay off. He reaches this figure by valuing the non-cash considerations included in Amoco's last settlement offer at $70,000, thus bringing the cash value of that offer to $670,000, and then subtracting $525,000. Amoco counters that even though the offer of judgment was lower than the settlement offer, it still exceeded by $150,000 what Amoco understood Radecki to be claiming in damages, and that it (Amoco) was unwilling to gamble on what the District Court might do concerning attorney fees. Amoco's position rings of reality, whereas Radecki's assertion that Amoco and its attorneys are modern-day Bat Mastersons is sheer conjecture. It seems most unlikely to us that Amoco, knowing that the attorney fees claimed approximated $300,000, would have gambled that a court would award attorney fees of only $145,000.

Carefully reviewing all of the evidence, we are " 'left with the definite and firm conviction' " that the District Court's finding that Amoco did not intend to include attorney fees in the amount offered is clearly erroneous. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). We are firmly convinced that Amoco intended to include attorney fees in its November 18 offer, and we overturn the District Court's finding to the contrary.

Because Amoco intended to include attorney fees in its November 18 offer of $525,000, its November 19 offer did not constitute a modification or, as a result, a revocation of the earlier offer,[4] but only a clarification.[5] Thus, we need not reach the issue the District Court addressed of whether a party may revoke its Rule 68 offer of judgment.[6]

Assuming *arguendo* that Rule 68 prohibits the revocation of an offer of judgment, we believe that courts should be hesitant to characterize as revocations offeror communications that clarify incomplete or ambiguous offers. The desirability of having such offers clarified is particularly great in the Rule 68 context. In the situation of a typical, garden-variety offer to contract, the offeree is free to reject the offer without running the risk of incurring liability as a result. But "a plaintiff who receives a Rule 68 offer is in a difficult position, because 'a Rule 68 offer has a binding effect when refused as well as when accepted' "; this results from the Rule's cost-shifting mechanism, which becomes operative upon failure to accept. *Shorter v. Valley Bank & Trust,* 678 F.Supp. 714, 719–20 (N.D.Ill.1988) (quoting *Boorstein,* 107 F.R.D. at 34). Thus, espe-

---

**4.** Under traditional rules governing the formation of contracts, a substantive alteration of an offer operates as a revocation of that offer. *See* A. Corbin, *supra* p. 5, § 39, at 163–64; *United Steelworkers of America v. Bell Foundry Co.,* 626 F.2d 139, 141 (9th Cir.1980).

**5.** The District Court glosses over this distinction when it states: "[A]n offer of judgment is irrevocable during the ten day period for acceptance. C. Wright & A. Miller, *Federal Practice and Pro-*

*cedure,* § 3004. Thus, Amoco could not properly withdraw or clarify its offer of November 18, 1986...." App. at 225.

**6.** At least one federal court, in addition to the District Court below, has taken the position that an offeror may not revoke a Rule 68 offer. *See Fisher,* 110 F.R.D. at 75 (E.D.Mich.1986); *see also* 12 C. Wright & A. Miller, *Federal Practice and Procedure* § 3004, at 59–60 (1973).

cially when considering a Rule 68 offer, the offeree needs to have a clear understanding of the terms of the offer in order to make an informed decision whether to accept it. *Boorstein*, 107 F.R.D. at 34. *See Adams*, 110 F.R.D. at 293. In addition, to allow preacceptance clarification of incomplete or ambiguous Rule 68 offers serves the offeror's and court's interests as well, since the offeror will be more certain of his potential liability and the court will not be called upon to interpret ambiguous offers. *See Marek*, 473 U.S. at 7; *Boorstein*, 107 F.R.D. at 34; *see also Evans*, 475 U.S. at 732–34, 106 S.Ct. at 1540–41.

We now come to Radecki's purported acceptance. As we noted earlier, for Radecki and Amoco to have created a binding agreement there must have been an objective manifestation of mutual assent. As one court has put it, the acceptance must "mirror" the offer. *Bentley*, 110 F.R.D. at 113. We hold that Radecki's purported acceptance does not sufficiently reflect Amoco's offer and therefore does not amount to an acceptance. While attempting to accept Amoco's offer, Radecki simultaneously filed a motion for attorney fees. Clearly, Radecki intended to accept an offer for $525,000 that was not inclusive of attorney fees, which is an offer Amoco had not extended. The materially different intent of the parties as manifiested in their actions shows there was no mutual assent, and hence no binding agreement.

■ We cannot hold the parties to a contract they never made. It therefore will be necessary for the parties to approach the settlement question anew. In addition, because of the unusual circumstances of this case, and the uncertainty of Radecki as to the legal effect of his post-clarification purported acceptance of Amoco's November 18 offer, we hold that the November offers have not made the cost-shifting mechanism of Rule 68 operative.

The District Court's entry of judgment and award of attorney fees is reversed and the case is remanded for further proceedings consistent with this opinion.

**FAIRCHILD**, Senior Circuit Judge, concurring in part, dissenting in part.

I concur in reversal of the judgment appealed from, but do not agree that the cost shifting mechanism of Rule 68 is inappropriate in this case.

Rule 68 appears to contemplate an offer of judgment for a specified sum, with costs accrued to that point to be added by the court in the event of acceptance. A defending party may, however, recite that costs are included in the sum he specifies and, where he does so, his offer is valid under Rule 68 for exactly the specified sum. *Marek v. Chesny*, 473 U.S. 1, 6, 105 S.Ct. 3012, 3015, 87 L.Ed.2d 1 (1985). Although the wording of the Rule makes it necessary to recite that costs are included if the offeror desires to avoid an addition of costs in the event of acceptance, nothing in the Rule has a similar impact on the matter of an attorney's fee.[1]

It seems to me, therefore, that an offer of judgment for a specified sum, including costs, necessarily means that if the offer be accepted, the resulting judgment will be for the specified sum, without addition of an attorney's fee whether or not the attorney's fee is a part of costs.

In my view, AMOCO's November 18 offer was plainly an offer of judgment for $525,000, and did not offer a judgment for that amount plus an attorney's fee to be fixed by the court. Thus I do not agree that resort to extrinsic evidence is required "to determine whether AMOCO intended the offered sum of $525,000 to subsume attorney fees." *Ante*, p. 400.

I do agree that although Radecki filed a formal acceptance of the offer, the circumstances, including particularly his simultaneous filing of an application for attorney's fees, gave his "acceptance" the legal effect of a rejection for the purpose of Rule 68.

With all respect I see no reason why his failure to accept the offer as made should not have the cost shifting consequences provided in the Rule, and I do not join in

---

1. The offer in *Marek* happened to specify that the amount included attorney's fees. I find

nothing to indicate that the explicit reference to fees was considered significant.

the direction that the cost shifting mechanism shall not operate in future proceedings in this case.

In my view, the offer was plain under Rule 68 and plaintiffs' professed understanding that the offer was for $525,000 plus an attorney's fee is not a sufficient reason for exempting plaintiffs from the operation of the Rule if it turns out that the judgment plaintiffs obtained is not more favorable than the offer.