Jerry M. SCHIRK, Plaintiff,

v.

Gerald HERLIK, Denise Servais, Michael Heraly, Paul Splawski, and Patrick Massey, Defendants.

Civ. A. No. 83–C–695.

United States District Court,
E.D. Wisconsin.

July 13, 1988.

Alvin Ugent, Podell, Ugent & Cross, S.C., Milwaukee, Wis., and Thomas Schultz, Green Bay, Wis., for plaintiff.

Joseph McDevitt, Borgelt, Powell, Peterson & Frauen, S.C., Milwaukee, Wis., for defendants.

## ORDER

TERENCE T. EVANS, District Judge.

Some time ago plaintiff's attorneys filed their request for attorney fees pursuant to 42 U.S.C. § 1988.

Affidavits submitted with the request indicated that hourly rates charged civil rights litigants in Milwaukee ranged from $100 to $250 per hour. That information apparently startled the defendants, who filed interrogatories about the plaintiff's attorneys' billing practices. There were objections to the interrogatories. At a hearing, the plaintiff's attorneys were ordered to provide some information about their fees in other civil rights litigation. By a letter dated June 2, 1988, I have been informed that the interrogatories were answered to the effect that plaintiff's attorneys have billed no prior civil rights cases. The attorney fees issue, therefore, is now ready for resolution.

Before I discuss the question of fees in this matter, I wish to comment briefly on the affidavits of attorneys Walter Kelly and William Lynch submitted in support of the request. Neither attorney was involved in the case and the affidavits are submitted as expert evidence regarding fees charged by civil rights lawyers in the Milwaukee area. Mr. Lynch states that the fees charged range from $150 to $200 per hour; Mr. Kelly finds that range from $100 to $250 per hour. Those statements could, I think, cause commercial lawyers to seriously consider changing fields. In a moment of realism, however, Mr. Lynch also states:

Because plaintiffs in Civil Rights litigation I have represented have not been able to pay hourly rates which adequately reflect the market value of legal services provided to them, I do not have a regular billing rate for representation of plaintiffs in Civil Rights litigation. My practice is generally to require a retainer within the limited means of a plaintiff to pay, and to represent the plaintiff on a contingency basis and on the basis of recovery of attorneys fees from defendants if plaintiff prevails.

In other words, in Mr. Lynch's experience, although the going rate for civil rights litigation is up to $200 per hour, because litigants cannot pay that much, they pay only a limited retainer. Fees then are recovered in successful cases from the defendants.

To sort this out: apparently I am to believe that lawyers bill clients from $100 to $250 per hour but, at least in the case of Mr. Lynch, are actually paid a retainer within the client's means. Then attorney fees are sought from the defendant pursuant to 42 U.S.C. § 1988 if the case is won. From this am I to infer that courts in this district are ordering up to $250 per hour under § 1988? If not, what relevance does the figure have? If the rate is never paid, how can it be the market rate? If it is the prevailing rate, I would be interested in seeing citations to cases reflecting such payments in this district. In short, I find that the affidavits submitted in support of the motion to be of little help in resolving the issues at hand.

That said, however, I must also say that I understand that in a civil rights case, more than likely a lawyer will be paid only if the case is won. Then the payment must ordinarily be scrutinized by a judge. Payment, in other words, is not so certain as it is for lawyers doing, for example, insurance defense work. And I believe that civil rights attorneys should be compensated fairly for their services. A final random thought before getting to the specifics is that civil rights attorneys, like all other lawyers, must exercise billing judgment in cases they win. As the Court stated in

*Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983):

> Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

The same could be said for the hourly rate. Now to the matter at hand.

The analysis of a proper fee award begins with "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley* at 433, 103 S.Ct. at 1939. The "lodestar" amount which results from this calculation is presumed to be the reasonable fee. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Certain facts which go into a calculation of the lodestar amount are the novelty and complexity of the issues, the skill and experience of counsel, the quality of representation, and the results of the litigation. *Blum, supra.* The Court has made clear that these factors go into the initial calculation and are not used to enhance the award beyond the lodestar figure. *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

Plaintiff's attorneys claim the following fees: Thomas O. Schultz claims fees for 358.3 hours at the rate of $175 per hour for a total of $62,702.50; Alvin R. Ugent claims fees for 169.5 hours at $175 per hour for a total of $29,662.50; Christine E. Linder claims 86.3 hours at $125 per hour for a total of $10,787.50; Joseph Gibart claims 12.9 hours at $125 per hour for a total of $1,612.50. The total fee request, then, is $104,765.00 for 627 hours of service. The issue is whether this amount is reasonable.

This was a four-day jury trial involving an improper police entry into a private home. During the entry Jerry Schirk was beaten and arrested. The jury awarded Mr. Schirk $60,000 in compensatory and $89,000 in punitive damages. I found that the award for punitive damages was excessive in a decision on motions after verdict. Plaintiff was given the option of accepting $20,000 in punitive damages or having a new trial on the issue. The final award in the case then, which was accepted by the plaintiff and paid by the defendants, was $80,000.

The issues raised in the case were interesting and significant. It was, however, a case only moderately difficult to litigate. Factually, there were several witnesses involved and differing interpretations of what occurred and why. From a legal standpoint, although it was not a totally clear-cut case, neither was it overly complex or demanding. In short, the case was of moderate difficulty and it was tried effectively.

The fee request here, given the nature of this case, is, in my opinion, way too high. The request does not reflect either reasonable rates or a reasonable number of hours for the services provided. Exercising billing judgment in a law firm would mean that no individual client would conceivably be billed 627 hours for this case. One can only imagine the clamor that would be created here if the attorneys sent Mr. Schirk his check for $80,000 with a request that it be endorsed over to them and returned along with an additional check for $24,765 to cover the attorneys' bill. Simply stated, putting 627 hours into this uncomplicated case, which translates into 78 complete eight-hour attorney days, is out of line, and charging for it to boot is grossly out of line.

I believe that in a case in which a client was paying the bill, a law firm would, in the exercise of billing judgment, reduce the size of this bill. I intend to reduce it as I believe it is roughly fifty percent too high. My view of what is reasonable here would, of course, be based on my familiarity with the case. It is my considered judgment that a fifty percent reduction would bring this bill into the realm of reason. I would like to, based on my experience, simply reduce this bill by fifty percent. The figure I would find reasonable, fifty percent of the $104,765, would include all nonstatutory out-of-pocket expenses incurred.

However, in *Heiar v. Crawford County, Wisconsin,* 746 F.2d 1190, 1204 (7th Cir. 1984), the court indicated that a percentage reduction was inappropriate:

But where as in this case the request is for a large amount of money, here more than $50,000, the judge must do more than eyeball the request and if it seems excessive cut it down by an arbitrary percentage. He has to make a judgment —considering the nature of the case and the details of the request, taking evidence if need be, and defending his judgment in a reasoned (though brief) opinion —on what the case should have cost the party who submitted the request.

Accordingly, as directed by *Heiar*, I have examined in considerable detail the time sheets submitted by the four attorneys who worked on this case. For one thing, it was unnecessary to have three lawyers in court for the trial. The time for at least one of the lawyers must be cut from the bill. Because she appeared to have the least active role, I will eliminate from attorney Linder's bill the 30 hours attributable to her presence at trial.

The documents also show an excessive amount of time spent in conference with Mr. and Mrs. Schirk. Attorney Schultz billed for over 23.5 hours of conferences with Schirk or, in a few cases, with Mrs. Schirk. Even this number of hours does not include all of the conferences with Mr. Schirk. For instance, on May 9, 1983, Schultz billed 4.8 hours for "Telephone conference with client; research; preparation and drafting of Summons and Complaint and Interrogatories." Similarly, on May 23, 1983, he billed 6.4 hours for "Research pleadings and liability issues; telephone conference with client." Because it is impossible to separate out the time attributable to the conferences, no percentage of these hours is included in the 23.5 hours mentioned above. In addition, attorney Ugent billed 8 hours for conferences with Schirk, and attorney Linder billed 2.2 hours. The attorneys therefore billed more than 33 hours for conferences with their client. Surely, 15 hours would have been more than enough; the bill is reduced by 18 hours. In addition, the four lawyers billed a good deal of time for conferences with one another. That time is reduced by 20 hours.

The time spent in depositions seems excessive as well. As defense attorney Joseph McDevitt points out, the time plaintiff's attorneys spent exceeds the time he spent at the same depositions in some cases. Plaintiff's attorneys billed approximately 140 hours in connection with the depositions. The time included in that calculation is time spent preparing and reviewing notices of depositions, preparing documents, attending depositions, summarizing depositions, and reviewing depositions. A cursory examination of the billing records reveals that at least 19 persons were deposed; it is, of course, possible that others were deposed who are not mentioned by name in the billing records. With the possible exception of Schirk, one or two of the officers involved, perhaps a doctor and neighbor Hounsell, it is hard to understand how any deposition in this case could take more than 2 hours. In my opinion a reasonable billing for depositions would be 75 hours; thus, 65 hours will be stricken from the bill. Thus, the hours billed here will be reduced by 133. Thirty-three of those hours will be taken from the time sheets of attorney Linder; the remainder will be divided between attorneys Ugent and Schultz.

In addition to the excessive hours, this is a case where the billing rates are too high. In a more complicated case that I recently tried, *Joseph Erwin v. Manitowoc County*, Civil Action 86–C–25, fees were requested based on a rate of $85 per hour. The attorney in that case has less experience than Mr. Schultz and Mr. Ugent; nevertheless, he prosecuted the case without co-counsel, and he did a very creditable job. It is difficult to understand why more than twice his hourly rate should be awarded in this case. In fact, Mr. Gibart, who never appeared in court, and Ms. Linder, who appeared in court but did not have an active role in the litigation, both request fees of $40 per hour more than the attorney in the *Erwin* case. I find that $75 per hour is an appropriate rate for attorneys Gibart and Linder and that $90 per hour is appropriate for attorneys Ugent and Schultz.

Thus, attorney Gibart's fees will be $967.50 (12.9 hours at $75 per hour); attor-

ney Linder's fees will be $4,200 (56 hours at $75 per hour); attorney Ugent's fees will be $10,755 (119.5 hours at $90 per hour); and attorney Schultz's fees will be $27,747 (308.3 hours at $90 per hour). The total award of attorney fees then is $43,669.50.

Statutory costs and expenses have been reviewed by the Clerk of Court. In addition, however, plaintiffs in civil rights litigation are entitled to other expenses such as "postage, long-distance calls, xeroxing, travel, paralegals, and expert witnesses." *Heiar, supra,* at 1203. The bill of costs submitted here shows an additional $5,367.55 in allowable nonstatutory costs.

It is interesting to note as I come to the end of this review that had I used my experience and intuition, I would, as I said on page 863, have concluded that a fifty percent reduction in the bill was called for in this case. A fifty percent figure would have reduced the bill to $52,383. But that would have been perceived as merely "eyeballing" the request, a practice frowned on by the court of appeals in *Heiar.* So, I have had to painstakingly review this fee request item by item, and that review has resulted in a reduction of 133 hours and a change in hourly rates resulting in a total fee award of $43,669.50. With the nonstatutory costs, I am approving a total of $49,037.05, a sum only $3,345.95 less than what I first believed would have been fair. So, my "eyeballing" would have been fairly good. It seems a shame and a bit of a waste of time that the court of appeals won't let district courts handle attorney's fees on an almost "eyeballing" basis. It also seems a bit peculiar that the law allows a jury of laypeople, sometimes completely unknowledgeable laypeople, to answer questions like "What sum of money should be awarded to the plaintiff?" without requiring that it give reasons for its decisions but that the law won't allow an experienced trial judge—in the area of attorney fees, which should be the judge's forte—to say "This request is excessive in my view and it's ordered reduced by fifty (or whatever) percent and that's the end of the matter." Hopefully, the court of appeals will reexamine its position and relax its demands in this area. Too much time is being spent on these kinds of issues, time that could be more productively spent somewhere else.

One final note about the size of the award I have approved. Had this case been handled on a contingent fee basis as explained in Mr. Lynch's affidavit previously quoted, the fee would be $26,667. I have approved a fee almost twice that large. And if Mr. Schirk had to pay $49,037.05 out of his award, he would certainly not be very happy. So it seems that strange things happen under fee shifting statutes. The bottom line, however, is that I believe that what I have approved is fair under the circumstances.

IT IS THEREFORE ORDERED that attorney fees in the amount of $43,669.50 and nonstatutory costs in the amount of $5,367.55 are awarded to the plaintiff, a total of $49,037.05.