Roosevelt STAPLES, Olive Bubenhein, and Eugene Wright, Plaintiffs,

v.

Agnes WICKESBERG, Defendant.

Civ. A. No. 87–C–799.

United States District Court, E.D. Wisconsin.

Nov. 7, 1988.

Diane L. Houk, Jacobson, Sodos & Krings, S.C., Milwaukee, Wis., for Eugene Wright.

Paul Higginbotham, Reynolds, Gruber, Herrick, Flesch & Kasdorf, Madison, Wis., for remaining plaintiffs.

Reuben W. Peterson, Jr., Borgelt, Powell, Peterson & Frauen, S.C., Milwaukee, Wis., for defendant.

## DECISION AND ORDER

TERENCE T. EVANS, District Judge.

This is another chapter in the story of how a simple request for attorney's fees in a civil rights case can turn into a journey through a tortuous legal maze. It is also another example of the time-consuming nature of these kinds of proceedings, a fact I cried a little about in *Schirk v. Herlik*, 689 F.Supp. 861 (E.D.Wis.1988).

Eugene Wright, the only successful plaintiff in this case, seeks an award of attorney's fees in the amount of $6,020. The fee request represents 75.25 hours of work performed by his attorney, Diane L. Houk, at a rate of $80 per hour. Ms. Houk has provided time sheets and affidavits documenting her hours and demonstrating that $80 per hour is a reasonable fee in light of her experience, the Milwaukee legal market, and the circumstances of the case.

The defendant, Agnes Wickesberg, opposes an award of attorney's fees. Alternatively, she argues that because Mr. Wright received only $1,000 in damages at trial, any award of attorney's fees should be "substantially less" than the $6,020 requested. In addition, Mrs. Wickesberg points out that Mr. Wright made a settlement offer two months before trial asking for only $2,125 in attorney's fees, along with $6,000 in damages. Finally, Mrs. Wickesberg says she offered to settle the case with Mr. Wright nineteen days before trial for $1,600 to $2,000. Whether this latter offer included attorney's fees will be discussed at unfortunate length in the course of this opinion.

## FACTS

Mr. Wright sued Mrs. Wickesberg for violating the Fair Housing Act of 1968, 42 U.S.C. § 3604, the Civil Rights Act of 1866, 42 U.S.C. § 1982, and the Wisconsin Fair Housing Act, § 101.22, Wis.Stat. He alleged that Mrs. Wickesberg refused to rent a property to him on account of his race. The other plaintiffs, Roosevelt Staples and Olive Bubenhein, made the same allegation. They had intended to occupy the property, whereas Mr. Wright was a "tester" seeking to determine whether Mrs. Wickesberg was complying with the law. He alleged

an "injury in precisely the form the [fair housing] statute was intended to guard against," *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982) (testers have standing to sue for damages under Fair Housing Act). Trial was set for August 16, 1988.

On June 23, 1988, Ms. Houk wrote to Mrs. Wickesberg's attorney offering to settle Mr. Wright's case for $6,000 in damages, $2,125 in attorney's fees, and $100 in court costs. This offer was not accepted.

On July 28, 1988, Mrs. Wickesberg's lawyer, Reuben Peterson, Jr., sent copies of a single settlement offer to Ms. Houk and Paul Higginbotham, the attorney for the other plaintiffs. Mr. Peterson said Mrs. Wickesberg would "pay $8,000 to conclude this litigation and I hereby offer that amount to both of you. I am not quite certain how to divide that amount," Mr. Peterson added, but "[i]t seems to me that Mr. Higginbotham's clients should be entitled to 75 to 80 percent of the amount and Ms. Houk's client to 20 to 25 percent. What is important is that the entire matter must be settled." Mr. Peterson did not file his offer with the court. At the time of this offer, Ms. Houk had expended 29.3 hours on the case.

On August 1, 1988, Ms. Houk responded to Mr. Peterson by telling him that she and Mr. Higginbotham were rejecting the offer. She also advised Mr. Peterson that "Mr. Higginbotham and I are unable to negotiate a joint settlement with you as we represent different parties with different interests. Therefore, any future settlement offers should be forwarded to Mr. Higginbotham or myself regarding our specific clients and their claims." Ms. Houk

made a counteroffer on behalf of Mr. Wright to settle his case for $7,500, including attorney's fees and court costs. The counteroffer was not accepted.

At the close of trial on August 18, 1988, the jury found that Mrs. Wickesberg had engaged in discrimination only as to Mr. Wright. The jury awarded him $1,000 in compensatory damages. As the prevailing party, he now seeks attorney's fees under 42 U.S.C. § 1988 and § 101.22(7)(a), Wis. Stat. Because I do not think this is the kind of case where I should reject, in an exercise of my discretion, any award of attorney's fees, I turn to Mrs. Wickesberg's more specific objections.

## DISCUSSION

I reject two of Mrs. Wickesberg's arguments right off the bat. Mr. Wright's offer of June 23 has no bearing on this matter because it was not accepted. And the fact that Mr. Wright ultimately won only $1,000 does not rule out an award of $6,020 in attorney's fees. As the court of appeals for this circuit has said, "Once it is determined that civil rights claims of small cash value nevertheless have enough social value to warrant litigation, it follows that attorney's fees awards will sometimes exceed the damages awards in such cases— and the Supreme Court therefore has held that the damage award is not a ceiling on the fee award." *Ustrak v. Fairman,* 851 F.2d 983, 989 (7th Cir.1988) (citing *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)).

In *Ustrak,* the appeals court awarded $21,100 in fees to an attorney in a civil rights suit where the plaintiff received only $1 in actual damages and $1,000 in punitive damages.[1] In this case, Mr. Wright did not

---

1. Actually, the jury that heard Mr. Ustrak's case gave him almost $50,000. The award, however, was stripped during the case's first visit to the court of appeals. *See* 781 F.2d 573 (7th Cir. 1986). He was left (properly so, I think) with only $1,001. During further proceedings, after the remand, Ustrak's attorney sought fees of approximately $50,000. The district court, after consideration of the request, awarded $30,000. Not happy, the defendant appealed again, and the court of appeals heard oral argument again, on April 6, 1988, more than two years after its

first decision in the case. Ninety-eight days later, the court of appeals spoke again, reducing the award to $21,100 but adding an as-yet-to-be-determined sum for attorney's fees incurred by Ustrak in protecting the lion's share of the award. So, Ustrak's case, which was filed in 1980 when Jimmy Carter was the president, looks like it will be closed during Ronald Reagan's final days in the oval office. This kind of situation will present itself again as courts continue to be required to review requests for attor-

receive punitive damages but, of course, any win in a housing discrimination case is important as it sends out a clear message that unequal treatment of renters or home buyers based on race will not be tolerated. As has been noted, "[r]egardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." *Riverside*, 477 U.S. at 574, 106 S.Ct. at 2694 (plurality opinion).

Mrs. Wickesberg's third argument—that Mr. Wright did not accept an offer that was greater than the jury's verdict—presents a much tougher call and indeed a knotty conundrum. This argument, if it were fleshed out by Mrs. Wickesberg's attorney, would go something like this: Mr. Peterson's letter of July 28 constituted an "Offer of Judgment" under rule 68 of the Federal Rules of Civil Procedure. The offer was for $1,600 to $2,000, but Mr. Wright eventually won only $1,000. Therefore, Mr. Wright must pay any costs, including attorney's fees, that he incurred after the making of the offer. In a case such as this one, where the underlying statutes define costs to include attorney's fees, attorney's fees are included as costs under rule 68. *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985).

Rule 68 provides in relevant part:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the of-

feree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

■ Mr. Wright contends that Mrs. Wickesberg's offer was invalid under rule 68 because Mr. Peterson's letter 1) was not filed with the court, 2) proposed payment of a single sum to all plaintiffs, and 3) did not explicitly agree to admit liability. The third contention is utterly without merit, while the first is simply without merit. An admission of liability is not required and an offer under rule 68 need not be "filed" any sooner or more formally than how it was handled here.

■ The second argument is mildly without merit. Mr. Peterson's letter was not invalid because it proposed that Mrs. Wickesberg "pay $8,000 to conclude this litigation ... to both of you," meaning to Ms. Houk's client and to Mr. Higginbotham's. The purpose of rule 68 is to encourage settlements and avoid protracted litigation. 7 J. Moore, J. Lucas, & K. Sinclair, *Moore's Federal Practice* para. 68.02 (2d ed. 1987); *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981). In light of this important purpose, I will not pick nits. To be sure, Mr. Peterson's letter was surely not his most artfully drafted document. Yet the offer was in writing, was timely served on the defendants, and proposed a monetary figure as well as a way of divying it among the plaintiffs. It seems reasonably certain that Mr. Peterson was proposing entry of judgment against his client "to conclude this litigation."

■ One facet of the letter, however, muddies whether Mr. Wright will receive attorney's fees for the entire litigation or only for work done up to the time of the offer. Even though I have found that Mr. Peterson's letter was a valid offer of judgment, I will have to award Mr. Wright fees for the whole case if Mrs. Wickesberg was not offering to pay attorney's fees in addition to $2,000. If the offer was not for $2,000 *plus* attorney's fees, then Mr. Wright actually obtained a more favorable

ney's fees in great detail. *See Schirk*, 689 F.Supp. at 865.

result by going to trial than by accepting the offer. If, however, the offer was for $2,000 and also attorney's fees, then Mr. Wright's verdict was less favorable than the offer.

If you think this is confusing, you're right—and it gets worse.

Some of the confusion stems from *Grosvenor v. Brienen*, 801 F.2d 944 (7th Cir.1986). There, the court of appeals held that in civil rights cases, "pre-offer attorney's fees must be added to the judgment award for the purposes of determining whether the result obtained by a plaintiff is more favorable than the offer of judgment he rejected." *Id.* at 948. In *Grosvenor*, the defendants' $7,500 offer had explicitly included costs and attorney's fees accrued up to the date of the offer. *Id.* at 945. The appeals court affirmed the district court's decision to add "$7,862.09 in pre-offer costs and attorney's fees to the $7,001.00 damage award in arriving at the relevant figure to compare with the final settlement offer of $7,500 to determine whether the plaintiff had obtained a result more favorable than the offer he rejected." *Id.*[2]

The broad language used by the court of appeals in devising its formula—and the opinion's focus on the "special status" of civil rights plaintiffs, *id.* at 948—lead me to conclude that I am supposed to add pre-offer costs and attorney's fees to the ultimate judgment whether or not pre-offer costs and attorney's fees were originally offered. Indeed, the district court in *Grosvenor* added to the judgment an amount of costs and attorney's fees that was greater than anything the defendants had offered.

In the instant case, Ms. Houk spent 29.3 hours on the case before receiving Mr. Peterson's offer. At $80 per hour, that amounts to $2,344.[3] When $2,344 is added

to Mr. Wright's $1,000 jury award, it totals $3,344, which of course is greater than Mrs. Wickesberg's offer of $1,600 to $2,000. Assuming that Mrs. Wickesberg was not offering $2,000 *plus* attorney's fees, Mr. Wright achieved a more favorable outcome by going to trial. He thus escapes the effect of rule 68. On the other hand, if Mrs. Wickesberg was in fact proposing to pay attorney's fees on top of $2,000, the actual and offered pre-offer attorney's fees cancel each other out, and Mr. Wright achieved a less favorable outcome because $1,000 is less than $1,600 or $2,000.

But did Mrs. Wickesberg offer attorney's fees in addition to $2,000? As a matter of common sense and contract principles, the answer is "no." As a matter of the case law that interprets rule 68, the answer is "maybe not." Rule 68, remember, refers to offers "with costs then accrued." And *Marek v. Chesny* says costs include attorney's fees when the claim arises under a fee-shifting statute, such as § 1988.

The Supreme Court has tried to clarify this part of the riddle, but with questionable success. In *Marek*, the Court made the following rather contradictory statements about attorney's fees and rule 68:

> If an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts the offer, the judgment will necessarily include costs; if the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of the Rule to include in its judgment an additional amount which in its discretion it determines to be sufficient to cover the costs.... As long as the offer does not implicitly or explicitly provide that the judgment *not* include costs, a timely offer will be valid.

**2.** The same math was used by the Supreme Court in *Marek v. Chesny*, in which the Court affirmed the denial of post-offer attorney's fees where the $100,000 offer specifically included attorney's fees, the plaintiff won $60,000 in damages, and the plaintiff's pre-offer fees amounted to $32,000. 473 U.S. at 7, 105 S.Ct. at 3015–16.

**3.** Mercifully, Mr. Peterson does not challenge the appropriateness of Ms. Houk's billing rate or the amount of hours she claims to have worked. I believe that her hourly rate and expenditures of time are reasonable.

... If defendants are not allowed to make lump-sum offers that would, if accepted, represent their total liability, they would understandably be reluctant to make settlement offers. As the Court of Appeals observed, "many a defendant would be unwilling to make a binding settlement offer on terms that left it exposed to liability for attorney's fees in whatever amount the court might fix on motion of the plaintiff."

*Marek,* 473 U.S. at 6–7, 105 S.Ct. at 3015 (citations omitted) (emphasis in original).

As I understand this language, the Court permits defendants to make lump-sum offers that include attorney's fees, but the Court simultaneously allows district judges to award attorney's fees after judgment is entered if the rule 68 offer did not explicitly address them one way or the other.

At least two district judges in this circuit have considered *Marek* where the offer was silent as to attorney's fees. In one case, Judge Milton Shadur, who has developed a cottage industry of sorts in writing rule 68 opinions,[4] held that plaintiffs could recover attorney's fees under § 1988 where an accepted offer of judgment did not say whether costs (and hence attorney's fees) were included. *Rateree v. Rockett,* 668 F.Supp. 1155 (N.D.Ill.1987). In the other case, Judge Prentice Marshall, just down the hall from Judge Shadur, held that a plaintiff was entitled to recover attorney's fees under the Age Discrimination in Employment Act where the accepted rule 68 offer included "costs accrued to this date," but did not mention attorney's fees. *Shorter v. Valley Bank & Trust,* 678 F.Supp. 714 (N.D.Ill.1988).

Reading Mr. Peterson's letter against the background of these cases, I believe that he was not offering attorney's fees on behalf of Mrs. Wickesberg. A valid rule 68 offer in a civil rights case does not necessarily contemplate payment of statutory attorney's fees in addition to the offered sum. The fact that I might have awarded such fees if the offer had been accepted does not fatten the defendant's own offer. It would be unfair to let those who extend the offers take advantage of any ambiguities depending on which interpretation best suits their present situation. *See Rateree,* 668 F.Supp. at 1159.

Accordingly, I find that Mr. Wright achieved a more favorable outcome by going to trial than by accepting the offer. By going to trial, Mr. Wright won $1,000 plus $2,344 in pre-offer attorney's fees, for a total of $3,344. If he had accepted the offer, he would have received $2,000 but no attorney's fees (although he could have moved for court-ordered attorney's fees). Therefore, Mrs. Wickesberg is liable for Mr. Wright's entire pre-offer and post-offer attorney's fees, which amount to $6,020.

After the verdict, I stayed entry of judgment for thirty days to permit post-trial motions to be filed. Thus, I now order entry of judgment in favor of Mr. Wright and dismiss the complaint on the merits as to the other plaintiffs. The defendant is ordered to pay Mr. Wright $1,000 in damages and $6,020 in attorney's fees plus his other costs apart from attorney's fees, as allowed by law.

Attorneys defending claims (or any cases with fee shifting available to the prevailing party) should clearly note, in the future, whether their rule 68 offer includes attorney's fees.

SO ORDERED.

---

**4.** *See, e.g., Marek,* 547 F.Supp. 542 (N.D.Ill. 1982), *rev'd,* 720 F.2d 474 (7th Cir.1983), *rev'd,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985); *Coleman v. McLaren,* 92 F.R.D. 754 (N.D.Ill. 1981), *aff'd sub nom. Pigeaud v. McLaren,* 699 F.2d 401 (7th Cir.1983); *Wrightwood Improvement Association v. Riccordino,* 1987 U.S. Dist. LEXIS 5272 (N.D.Ill.1987) [available on WESTLAW, 1987 WL 13000]; *Matula v. Martwick,* No. 86–C–6280 (N.D.Ill. Sept. 9, 1986) [1986 WL 10044] (reproduced in *Wrightwood, supra*).