Steven **LEVINE**, Plaintiff,

v.

Chief Justice Nathan S. **HEFFERNAN**, Justice Shirley S. Abrahamson, Justice William A. Bablitch, Justice William G. Callow, Justice Louis J. Ceci, Justice Roland B. Day, Justice Donald W. Steinmetz, in their official capacities as Justices of the Supreme Court of Wisconsin; Stephen L. Smay, Executive Director of the State Bar of Wisconsin; and The State Bar of Wisconsin, an association of lawyers, Defendants.

No. 86–C–578–C.

United States District Court, W.D. Wisconsin.

Aug. 15, 1988.

---

See also, 679 F.Supp. 1478.

Steven Levine, Middleton, Wis., for plaintiff.

Edward S. Marion, Asst. Atty. Gen., Madison, Wis., for Supreme Court Justices.

John S. Skilton, Foley & Lardner, Madison, Wis., for Smay, State Bar of Wisconsin.

## ORDER

CRABB, Chief Judge.

In an order entered May 6, 1988, I directed the parties in this case to brief the issue whether plaintiff, a lawyer, is entitled to attorney's fees under 42 U.S.C. § 1988. Now before the court is plaintiff's motion for attorney's fees and costs in the amount of $30,202.75.[1]

Defendants argue that pro se litigants are not entitled to attorney's fees under § 1988, whether or not they are lawyers. Alternatively, defendants contend that even if pro se plaintiffs who are lawyers are entitled to attorney's fees, fees should be denied because of the special circumstances of this case. Plaintiff argues that the award of attorney's fees to prevailing pro se plaintiffs who are lawyers would be consistent with the intent of Congress when it enacted § 1988. Thus, the parties

have presented two main issues: (1) whether a pro se plaintiff such as this one who is a lawyer is entitled to attorney's fees under § 1988; and (2) if so, whether any special circumstances are present in this case that would favor denial of attorney's fees. I will begin with the special circumstances issue.

Section 1988 states in part that

[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The prevailing party in a civil rights suit "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), *quoted in* S.Rep. No. 1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S. Code Cong. & Admin.News 5908, 5912. In other words, there is a presumption in favor of the award of attorney's fees under § 1988.

Courts have found very few circumstances to be so special that they would make an award of attorney's fees unjust. For example, courts have held that the following circumstances did not justify a denial of attorney's fees: the fact that the financial burden of the award would fall on state taxpayers, *Johnson v. State of Mississippi*, 606 F.2d 635, 637 (5th Cir.1979); defendants' good faith; the fact that the civil rights action in question provided only a private benefit to the plaintiff rather than a public benefit to a class of similarly situated persons; the fact that the case was relatively simple; the fact that the law was uncertain. *See J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1474 (10th Cir.1985), *and cases cited therein* (listing circumstances found not to be special by other courts and finding that fact that

---

**1.** This amount is broken down as follows: $29,-900.00 in attorney's fees for 296.5 hours of legal work at the rate of $100.00 per hour, and $302.75 in costs.

plaintiffs prevailed primarily on non-constitutional grounds does not constitute a special circumstance favoring denial of an award of attorney's fees under § 1988).

■ Defendant State Bar contends that special circumstances are present in this case. It argues that it was not responsible for promulgating or enforcing Supreme Court Rule 10.03, which required all licensed lawyers in Wisconsin to be members of the state bar association. Defendant points out that the cost of plaintiff's attorney's fees will be borne by members of the state bar association, although the membership of the bar association was not responsible for promulgating the mandatory membership requirement. In light of decisions such as those cited above, I conclude that the circumstances noted by defendant State Bar are not special enough to justify denying plaintiff an award of attorney's fees.[2]

■ It could be argued, however, that the situation of the pro se civil rights plaintiff is a circumstance special enough to defeat the presumption in favor of awarding attorney's fees. Courts have routinely denied attorney's fees where the prevailing plaintiff represented him- or herself and was not a lawyer. *See Redding v. Fairman,* 717 F.2d 1105, 1120 (7th Cir.1983); *Owens–El v. Robinson,* 694 F.2d 941 (3rd Cir.1982); *Cofield v. Atlanta,* 648 F.2d 986 (5th Cir.1981); *Lovell v. Snow,* 637 F.2d 170 (1st Cir.1981); *Davis v. Parratt,* 608 F.2d 717 (8th Cir.1979). Although the courts that have denied fees to pro se litigants do not describe their pro se status as a special circumstance, the uniform holdings of cases like the ones just cited suggest that they view it as such.

The legislative history is not clear cut on this question. It is unlikely that Congress considered whether persons who litigated on their own behalves needed the incentive of reimbursement for the time they took from other pursuits to prosecute their law suits. However, the history may be read as supporting the view that § 1988 attor-

ney's fees were not intended for pro se litigants. The language of Senate Report No. 94–1011 indicates that Congress was thinking of the usual attorney-client relationship when it considered the need for attorney's fees in civil rights actions. The following passage in particular has been quoted by courts declining to award attorney's fees to pro se litigants:

In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

S.Rep. No. 1011, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5910.

According to the Court of Appeals for the Eighth Circuit, "[t]his section presupposes a relationship of attorney and client that is lacking" in the case of the pro se litigant. *Davis v. Parratt,* 608 F.2d at 718. In *Cofield v. City of Atlanta,* 648 F.2d at 988, the Court of Appeals for the Fifth Circuit stated that the intent of Congress in enacting § 1988 was "not to compensate a worthy advocate but to enable and encourage a wronged person to retain a lawyer." *See also Owens–El v. Robinson,* 694 F.2d at 943. Common to these interpretations of legislative intent is the idea that the possibility of an award of attorney's fees is intended primarily to encourage lawyers to take on the representation of plaintiffs suing to vindicate their civil rights. Such actions rarely result in large damages awards; indeed, it is not uncommon for civil rights plaintiffs to seek only injunctive relief. *Cf. Kerr v. Quinn,* 692 F.2d 875 (2d Cir.1982) (discussing propriety of award of attorney's fees under § 1988 in cases where plaintiffs have contingency fee arrangements with lawyers). Consequent-

---

**2.** Defendant justices of the Wisconsin supreme court argue that the fact that plaintiff has incurred no lost opportunity costs constitutes a

special circumstance that would render an award of attorney's fees unjust. I address this contention, *infra,* at 177 n. 6.

ly, lawyers need an economic incentive to accept civil rights plaintiffs as clients.[3] Congress's intent in enacting § 1988 is carried out when the prospect of an award of attorney's fees to the prevailing party succeeds in bringing together a wronged citizen and a lawyer willing to represent the citizen.[4]

The analysis of plaintiff's request could end here, with the conclusion that Congress did not intend that § 1988 would authorize the payment of attorney's fees to persons representing themselves, and with the citation of *Redding v. Fairman*, 717 F.2d at 1120, in which the Court of Appeals for the Seventh Circuit held that prisoners who represented themselves in a suit challenging prison disciplinary procedures could not receive attorney's fees under § 1988.[5] However, it is necessary to address the fact that some courts in other circuits have read § 1988 as authorizing fee awards to *lawyer* pro se litigants, although not to non-lawyers representing themselves. These courts have taken the position that there are important distinctions between non-lawyer and lawyer pro se litigants that justify awarding the latter attorney's fees.

These distinctions relate chiefly to the valuation of a lawyer pro se litigant's time and services. For example, courts have argued that lawyer pro se litigants incur actual expenses in the form of lost opportunity costs. *Duncan v. Poythress*, 777 F.2d at 1514; *Ellis v. Cassidy*, 625 F.2d 227, 231 (9th Cir.1980) (attorneys have suffered "pecuniary loss, since they have been required to take time away from their practices to prepare and defend the suit"); *see also Cazalas v. United States Department of Justice*, 709 F.2d 1051, 1057 (5th Cir.1983) (Freedom of Information Act case). Moreover, because a lawyer can sell his or her services in the open market, *Duncan v. Poythress*, 777 F.2d at 1514, it is much easier to value those services than the services of a non-lawyer pro se litigant. *Cazalas v. United States Department of Justice*, 709 F.2d at 1057 (lawyer's opportunity costs are "relatively simple to value ... for the work foregone is of the same nature as that actually performed. Such is not the case for non-attorney *pro se* litigants"); *Rybicki v. State Board of Elections of Illinois*, 584 F.Supp. 849, 860 (N.D.Ill. 1984).

**3.** This is true even in situations in which the client would not normally be expected to pay for the services of a lawyer, as in the case of civil rights plaintiffs represented by legal services organizations. *See Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (nonprofit legal aid society lawyers entitled to attorney's fees at market rate). Non-profit legal services organizations may not need the same economic incentive as private practitioners, but like any law firm they have overhead costs that may discourage them from accepting a difficult and non-remunerative civil rights action in the absence of the prospect of attorney's fees.

Thus, plaintiff is correct in pointing out that a party's ability to pay is not relevant to the determination whether to award attorney's fees. *See Entertainment Concepts, Inc., III v. Maciejewski*, 631 F.2d 497 (7th Cir.1980), *cert. denied*, 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981). This is so because Congress did not contemplate reimbursing plaintiffs, but rather their attorneys.

**4.** Some courts have pointed to language in the Senate report that indicates Congress's desire to attract competent counsel to represent plaintiffs in civil rights actions. *See* Senate Report No. 94–1011 U.S.Code Cong. & Admin.News 1976, at 5913 (cases such as *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974) "have re-

sulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys"); *Duncan v. Poythress*, 777 F.2d 1508, 1513 (11th Cir.1985) (primary concern of Congress was to "increase the level of competence" with which civil rights actions are litigated). An increase in the level of competence in civil rights actions may well be an ancillary effect of providing for the award of attorney's fees. However, the primary significance of the legislative language quoted above is its implication that § 1988 is meant to bring together a client and a lawyer.

**5.** The scope of the holding in *Redding v. Fairman* is unclear, however. The court stated that it agreed with the lower court that "an award of attorney's fees *to a prisoner appearing pro se* is not appropriate under Section 1988." *Id.* (emphasis added) In *DeBold v. Stimson*, 735 F.2d 1037, 1042 (7th Cir.1984), which did not concern a prisoner, and which held that a non-lawyer pro se litigant is not entitled to the award of attorney's fees under the Freedom of Information Act, the court re-stated its holding in *Redding* in broader terms: "The term 'attorney fees' contemplates that the services of an attorney be utilized. *Cf. Redding v. Fairman* ... (pro se litigant not entitled to an award of attorney fees under the Civil Rights Act, 42 U.S.C. § 1988)." *DeBold* at 1042.

Although courts attempt to justify these arguments by linking them to legislative intent, there is, as I have noted, no language in the legislative history indicating that Congress ever considered the special circumstance of pro se litigants. Arguments about the relative ease of valuing lawyer pro se litigants' time and services are a judicial gloss on the legislative history of § 1988. In itself, this fact might not preclude the award of attorney's fees to lawyer pro se litigants. The harder question is whether a principled distinction can be made between non-lawyer and lawyer pro se litigants on the basis of these arguments. For example, many non-lawyer pro se litigants incur lost opportunity costs. If § 1988 is interpreted as having been intended to reimburse plaintiffs with valid civil rights complaints for their lost opportunity costs, it is difficult to explain why it is only the lost opportunity costs of lawyers that require, or deserve, reimbursement. If the argument is that the lost opportunity costs of non-lawyers bear no relationship to the fees a lawyer might charge, it does not follow that the non-lawyer could not be reimbursed at a level roughly equivalent to what a lawyer would receive, discounted to reflect the non-lawyer pro se litigant's lack of training. Courts make similar reductions in cases where the lawyer's experience does not justify the market rate, *see, e.g., Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (discounting fees for inexperienced non-profit legal services attorney), or where the uncomplicated nature of the case does not appear to merit the fees requested.[6]

In summary, the arguments made in favor of awarding attorney's fees to lawyer pro se litigants are not convincing in their attempts to distinguish lawyers from non-lawyers. At worst, artificial distinctions between lawyer and non-lawyer pro se litigants undermine the idea that *all* citizens should be encouraged to vindicate their civil rights. The legislative history of § 1988 indicates that Congress intended to encourage citizens to act as private attorneys general by awarding attorney's fees to the lawyers representing them. Most circuits, including the Seventh Circuit, have not read legislative history broadly to include non-lawyer litigants who represent themselves. I find no reason to make an exception to that narrow reading for lawyer pro se litigants.

### Order

IT IS ORDERED that plaintiff's request for an award of attorney's fees pursuant to 42 U.S.C. § 1988 is DENIED.

---

**6.** A strong argument can also be made that the "cost" of litigating is not just the money earning opportunities forgone, but the pleasures of life that could not be enjoyed. Plaintiff is a salaried lawyer employed by a state agency. He did all of the litigating of this case in his "free time," that is, in the evenings and on weekends. However, many non-lawyer pro se litigants could also argue that they have lost leisure time prosecuting their law suits. It is difficult to maintain that the leisure time of these litigants is worthless because they are not lawyers. If plaintiff's leisure time can be valued on the basis of what he might earn in the open market, then there is no reason why non-lawyer pro se litigants should not use the same measure for valuing their leisure time. *See* Note, Pro Se Can You Sue?: Attorney Fees for Pro Se Litigants, 34 Stan.L.Rev. at 680 (courts should choose arbitrary rule for compensating pro se litigants for lost leisure time; "[a]t the margin, leisure time is presumably of equal value to work time; otherwise, an individual would choose to work additional hours").