Andrew J. KYREAKAKIS, et al.,

v.

Alexander PATERNOSTER, et al., Defendants.

Civ. A. No. 88–2273.

United States District Court, D. New Jersey.

Feb. 28, 1990.

---

**1288**

Roger Lowenstein, Dickson, Creighton & Lowenstein, P.A., Hoboken, N.J., Anthony Ambrosio, Ambrosio, Kyreakakis & Di Lorenzo, Bloomfield, N.J., for plaintiff Kyreakakis.

Steven R. Maslo, and Mary Ann Murphy, Asst. Corp. Counsels, Joseph Healy, Corp. Counsel, Jersey City, N.J., for defendants City of Jersey City, and John Does # 1–25, the said names being fictitious.

John A. Moore, Jersey City, N.J., for defendant Robert Hine.

Timothy J. Hawkes, Allen & Hawkes, Jersey City, N.J., for defendant William Stetson.

Daniel A. D'Alessandro, D'Allessandro & Tutak, Jersey City, N.J., for defendant Charles Belucci.

Samuel R. De Luca, Jersey City, N.J., for defendant Alexander Paternoster.

## OPINION AND ORDER

POLITAN, District Judge.

This matter comes before the Court on plaintiff Andrew J. Kyreakakis' motion for attorneys' fees and costs pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976, codified at 42 U.S.C. § 1988.[1] This section allows the Court, in its discretion, to award fees to the prevailing party in an action brought to enforce one of the listed Federal Civil Rights laws. Plaintiff instituted this action on May 20, 1989 charging defendants, individual Jersey City Police officers and the City of Jersey City, with a myriad of violations of the Federal Civil Rights Act of 1871, codified at 42 U.S.C. § 1983.

Plaintiff alleged that he was battered, falsely arrested, imprisoned and maliciously prosecuted for obstructing a governmental function. Plaintiff was convicted of this offense in the Jersey City Municipal Court. The conviction was overturned on appeal. Plaintiff's Complaint also charges the Jersey City Municipal Court system with various acts of conspiracy stemming from the conviction. Plaintiff's motion seeks an award of fees incurred in the defense of the state criminal action, as well as fees incurred in the prosecution of the federal suit.

The present action ended by plaintiff's acceptance, on June 8, 1989 of defendants' Rule 68 Offer of Judgment. Judge Sarokin entered judgment on July 5, 1989. The Court heard oral argument on September 25, 1989 and reserved decision. For the reasons outlined herein, the motion is now GRANTED in part and DENIED in part.

█ The first issue raised by plaintiff's application concerns the proper construction of a Rule 68 Offer of Judgment. This Rule is a cost-shifting provision designed to encourage settlement and deter litigation.[2]

---

1. This section provides in part: In an action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the *United States, a reasonable attorneys' fee* as part of the costs.

2. The cost-shifting aspect of Rule 68 is triggered when a valid offer is not accepted:

   An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is

not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commence-

*See Delta Airlines, Inc. v. August,* 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981). Rule 68 provides in relevant part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, *with costs then accrued.* If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. (Emphasis added.)

Defendants served upon plaintiff an offer of judgment on May 31, 1989. The offer provided:

> The defendants, Alexander Paternoster, William Stetson, Charles Belucci, Robert Hine and the City of Jersey City, offers to allow judgment to be taken against them by the plaintiff for $50,000.00 with costs now occurred.

Plaintiff's June 8, 1989 acceptance read:

> Pursuant to Federal Rule of Civil Procedure 68, plaintiff, Andrew J. Kyreakakis, hereby accepts the Offer of Judgment for $50,000.00 with costs accrued as of the date of service of the Offer of Judgment.

Defendants argue that plaintiff's motion should be denied because the $50,000.00 Offer of Judgment, by its terms, included attorneys' fees. Plaintiff maintains that because defendants' offer "tracked" the language of the Rule, they offered to "pay plaintiff a judgment in the amount of $50,-000.00 and his costs, including attorneys' fees and expenses." Both parties rely on the Supreme Court's decision in *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1984).

In *Marek,* the Supreme Court reached two important conclusions concerning Rule 68. First, that "where the underlying stat-ute defines 'costs' to include attorneys' fees, ... such fees are to be included as costs for purposes of Rule 68." *Id.* at 9, 105 S.Ct. at 3016. The present action duplicates *Marek* in that plaintiff sued under § 1983 and moved for fees pursuant to § 1988 which, as indicated, includes attorneys' fees as costs. Although the plaintiff in *Marek* rejected defendants' Offer of Judgment, the principle that costs, within the context of Rule 68 and § 1988, includes attorneys' fees, remains directly apposite.

Second, the Supreme Court rejected plaintiff's argument that a valid Rule 68 offer had to itemize the amount tendered for settlement and the amount tendered for costs. *Id.* at 6, 105 S.Ct. at 3015. The Court reasoned that Rule 68's express intention of encouraging complete settlement of litigation would be furthered by this construction. The Court wrote:

> If defendants are not allowed to make lump-sum offers that would, if accepted, represent their total liability, they would understandably be reluctant to make settlement offers.

*Id.* at 6–7, 105 S.Ct. at 3015–3016; *See Evans v. Jeff D.,* 475 U.S. 717, 733–744, 106 S.Ct. 1531, 1540–1546, 89 L.Ed.2d 747 (1985); ("To promote both settlement and civil rights, we implicitly acknowledge in *Marek v. Chesny,* the possibility of a trade-off between merits relief and attorneys' fees when we upheld the defendants' lump sum offer...."). Importantly, the Court quoted the language of the Court of Appeals that "many a defendant would be unwilling to make a binding settlement offer on terms that left it exposed to liability for attorneys' fees in whatever amount the court might fix on motion of the plaintiff." *Marek,* 473 U.S. at 7, 105 S.Ct. at 3015; quoting *Chesny v. Marek,* 720 F.2d 474, 477 (7th Cir.1983).

Plaintiff distinguishes *Marek* by arguing that because the instant offer "quoted verbatim the language of Rule 68", unlike the *Marek* offer which provided "for a sum, including costs now accrued and attorneys' fees", he is entitled to fees in addition to the $50,000.00 judgment already entered. There is nothing, however, in Rule 68 or

extent of liability.

ment of hearings to determine the amount or

*Marek* which supports the contention that by quoting Rule 68, a defendant thereby forfeits the benefits of the Rule. On the contrary, *Marek* stands for the proposition that a valid Rule 68 offer may not exclude costs and that any judgment entered pursuant to Rule 68 will include costs and thus, when so defined by the substantive statute, attorneys' fees. The Court wrote:

> The critical feature of this portion of the Rule *is that the offer be one that allows judgment to be taken against the defendant for both the damages caused by the challenged conduct and the costs then accrued.* In other words, the drafters' concern was not so much with the particular components of offers, but with the judgments to be allowed against defendants. *If an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts the offer, the judgment will necessarily include costs;* if the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of the Rule to include in its judgment an additional amount which in its discretion, *see Delta Air Lines, Inc. v. August, supra,* [450 U.S.] at 362 [101 S.Ct. at 1155] (Powell, J., concurring), it determines to be sufficient to cover the costs. In either case, however, the offer has allowed judgment to be entered against the defendant both for damages caused by the challenged conduct and for costs. Accordingly, it is immaterial whether the offer recites that costs are included, whether it specifies the amount the defendant is allowed for costs, or, for that matter, whether it refers to costs at all. *As long as the offer does not implicitly or explicitly provide that the judgment not include costs, a timely offer will be valid.* (Emphasis added.)

*Id.* at 6, 105 S.Ct. at 3015.

There is a three step method of analysis suggested by this language. First, a valid

Rule 68 offer may not "implicitly or explicitly provide that the judgment not include costs." Defendants' offer did not, either implicitly or explicitly, exclude costs. Rather, it provided that the offer was for "$50,000.00 with costs now occurred." This offer was accepted "with costs accrued". The Court cannot find from this language that the offer and acceptance was invalid or that the language "with costs" can be interpreted to mean "without" or to the exclusion of costs.

Second, the Court must determine if the offer "recited that costs are included" and if it did, the judgment will necessarily be with costs and thus attorneys' fees. The third step, the discretionary award of costs by the Court, is only reached if a valid offer "does not state that costs are included and amount for costs is not specified". *Id.* at 6, 105 S.Ct. at 3015. Under the *Marek* analysis the calculation of this award should take place before judgment is entered and then should be memorialized in the judgment. The litigation is thus completely ended in accordance with the clear design of Rule 68. The judgment entered in this case contradicts this analysis because it directs the parties to brief the issue of fees and costs after a judgment has been entered. The litigation, therefore, continued.

The difficult task this Court must now perform is to reconcile *Marek* and Rule 68 with the facts of this case. While it is clear that both *Marek* and Rule 68 are designed to encourage complete settlement it is equally clear that in certain limited cases litigants, and the Court, will use words and procedural devices which do not accurately memorialize either their agreements or judgments. In such a case the time worn axiom that we should "not exalt procedure over substance" is particularly appropriate.[3] Such is the case at bar.

---

3. A contract entered into pursuant to Rule 68 should be interpreted like any other contract. *Radecki v. Amoco Oil Co.,* 858 F.2d 397, 400 (8th Cir.1988); *citing, Johnson v. University College of the Univ. of Alabama,* 706 F.2d 1205, 1209 (11th Cir.1983), *cert denied,* 464 U.S. 994, 104

S.Ct. 489, 78 L.Ed.2d 684 (1983). This contract was entered into in New Jersey and this court is therefore bound by New Jersey's rules of contract interpretation. *Gray v. Joseph J. Brunetti Const. Co.,* 266 F.2d 809 (3d Cir.1959), *cert denied,* 361 U.S. 826, 80 S.Ct. 74, 4 L.Ed.2d 69

The first and most significant fact relevant to this issue is the judgment entered by Judge Sarokin. The form of this judgment was prepared by the plaintiff and was not objected to by the defendants. It provided:

> This matter having been brought before the Court by an Offer of Judgment made by defendant, City of Jersey City pursuant to Rule 68, which was accepted by plaintiff, and copies of the Offer of Judgment and plaintiff's Notice of Acceptance of the Offer of Judgment having been submitted to this Court,
>
> IT IS HEREBY on the 5 day of July, 1989 ORDERED AND ADJUDGED that Judgment be taken against defendant, City of Jersey City for $50,000.00, in favor of plaintiff Andrew J. Kyreakakis in this action, with accrued costs; and it is further
>
> ORDERED that defendant City of Jersey City shall remit said $50,000.00 within 30 days from the date of this Judgment ...; and it is further
>
> ORDERED that plaintiff shall *submit his motion-papers in support of attorneys' fees and out-of-pocket expenses by June 30, 1989;* [emphasis added] and it is further
>
> ORDERED that the return date for said motion shall be July 24, 1989;....

It is thus clear that neither the Court, nor the litigants, contemplated that the Rule 68 offer would resolve defendants entire liability. It is reasonable to conclude that the defendants would have strongly objected to the form of this judgment had they intended their offer to be lump sum, inclusive of attorney fees and costs. Having failed to object the defendants can not now ask this Court to adopt a holding directly contrary to the form of judgment entered. The Court is bound by the language of this judgment and is guided by the principle that "the most fair and reasonable interpretation imputing the least hardship on either of the contracting parties should be adopted so that neither will have an unfair or unreasonable advantage over the other." *Matter of Community Medical Center,* 623 F.2d 864, 866 (3d Cir. 1980), *citing, Tessmar v. Grosner,* 23 N.J. 193, 201, 128 A.2d 467 (1957). Construing the parties' agreement as lump sum, in light of the Court's judgment and without any evidence of such intention, would unjustly enrich the defendants and thus offend the principles of fairness inherent in New Jersey's interpretive rules.[4]

The circumstances preceding the Offer of Judgment support this conclusion. Throughout the litigation plaintiff consistently maintained that settlement could only be achieved by an offer of "six figures." After reversal of the municipal conviction this amount was clarified as $250,000.00. Mr. Kyreakakis and Ambrosio submit affidavits unequivocally stating that they would never have accepted the $50,000.00 offer had they understood this figure to represent defendants' entire damage and

(1959). In New Jersey the interpretation of a contract is usually a question of law for the court. *First Jersey National Bank v. Dome Petroleum Limited,* 723 F.2d 335, 339 (3d Cir.1983). The "polestar" of the interpretive process is the intent of the parties. *Kearny PBA Local # 21 v. Town of Kearny,* 81 N.J. 208, 405 A.2d 393 (1979). The court should not search for the unexpressed subjective intent of the parties, *Krosnowski v. Krosnowski,* 22 N.J. 376, 126 A.2d 182 (1956), but rather should "look to the objective intent manifested in the language of the contract in light of the circumstances surrounding the transaction." *Dome Petro. LTD. v. Employers Mut. Liability Ins. Co.,* 767 F.2d 43, 47 (3d Cir.1985), *citing, Communications Workers of America, Local 1087 v. Monmouth County Board of Social Services,* 96 N.J. 442, 476 A.2d 777 (1984). When interpreting a contract words must be given their clear, plain and normal meaning. *Independent Oil Workers at Paulsboro, N.J. v. Mobil Oil Corp.,* 441 F.2d 651 (3d Cir.1971).

4. The court takes note of the distinction between contract interpretation and contract construction. *See Ram Const. Co., Inc. v. American States Ins. Co.,* 749 F.2d 1049, 1053 (3d. Cir. 1984); *John F. Harkins Co., Inc. v. Waldinger Corp.,* 796 F.2d 657, 659 (3d Cir.1986), *cert. denied,* 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987). In the case at bar the court is required to both interpret the meaning of the words used by the parties and determine their legal operation. The process used could, therefore, be accurately described as construction because this process "starts with the interpretation of its language but does not end with it." 3 Corbin, Corbin on Contracts § 534 at 9 (1960).

attorney fee liability. The defendants submit no affidavit controverting plaintiff's submissions. The Court thus finds that they accurately represent the subject events.[5]

It is also important to note that while the language used in defendants' Offer of Judgment did "track" the statute, it is, under these circumstances, subject to various plausible interpretations. The phrase "with costs" is far more ambiguous than the Supreme Court's language of "recites that costs are *included*." The word "with", depending on its usage, can indicate accompaniment, combination or inclusion. It is not synonymous with "including." While the Court notes the caveat that because a Rule 68 Offer of Judgment has a binding effect when refused as well as when accepted, a Court should be reluctant to conclude that an offer of judgment is ambiguous; *see Boorstein v. City of New York*, 107 F.R.D. 31, 34 (S.D.N.Y. 1985); *Shorter v. Valley Bank & Trust Co.*, 678 F.Supp. 714 (N.D.Ill.1988); it finds that many of the concerns expressed in these decisions are not relevant in this case. Of particular concern to the *Shorter* Court was the fact that if extrinsic evidence were used to interpret Rule 68 offers the plaintiff would be forced to guess how this extrinsic evidence would be interpreted when deciding to accept or reject the offer. *Shorter, supra* at 720. The Court felt that adherence to the language of the offer "whenever possible alleviates this unfairness...." *Id.* at 720.

■ The present offer, however, was accepted by plaintiff and memorialized in a Court judgment. No unfairness would result to the plaintiff by examining extrinsic evidence to clarify the parties and Court's intentions. On the contrary, it seems that when an offer has been accepted, and it is reasonably subject to differing interpretations, principles of equity and fair play mandate an examination of the circumstances surrounding the offer. Just as a plaintiff should not be forced to guess how

extrinsic evidence will be interpreted when deciding to accept an offer, a Court should not be forced to divine meaning from an inherently unclear offer and acceptance without the aid of extrinsic evidence. In the case at bar, such evidence clearly indicates that the parties used words that they thought accurately memorialized their agreement but later, upon reinspection, were subject to two plausible interpretations. The Court should not void the contract or give effect to form, but rather should give effect to the agreement the parties and the Court intended to enter into. The Court must, pursuant to *Marek*, add attorneys' fees to the Rule 68 judgment.

Numerous post *Marek* decisions support this interpretation. In *Radecki v. Amoco Oil Co.*, 858 F.2d 397 (8th Cir.1988) the defendant, after extensive settlement discussions concerning its entire liability, including attorneys' fees, offered to allow judgment against it "in the amount of $525,000.00 including costs now accrued." The following day Amoco served plaintiff with a second offer of judgment which differed from the first only in that it "stated explicitly that the amount offered was inclusive of attorney fees." *Id.* at 399. Plaintiff thereafter filed an "acceptance of judgment" of the first offer and a motion for attorneys' fees.

The District Court held that the first offer could not be withdrawn and that, by its terms, it did not "subsume" attorney fees. The Court thus awarded plaintiff an additional $229,887.29 in fees. The Circuit Court reversed finding that, even though the offer did not mention fees and that "costs" within the context of the substantive statute, 15 U.S.C. § 2801, et seq., did not include fees, the offer was lump-sum designed to fully resolve Amoco's liability.

The present action is distinguished in a variety of ways. First, the parties never substantially discussed settlement prior to defendants offer. There is, therefore,

---

**5.** Further, after receipt of the offer of judgment Plaintiff spent considerable time researching the issue of the recovery of fees after a Rule 68 acceptance. Plaintiff would not have invested this time had he understood the offer to be inclusive of attorneys' fees. This is true because the offer was significantly below Plaintiffs consistent settlement target of "six figures."

nothing in the record, as in *Radecki*, which would indicate that plaintiffs would have settled for $50,000.00. In *Radecki* the settlement figures closely approximated the defendants' offer of judgment. Here, the offer was substantially less than plaintiff's settlement target. Moreover, the language of the offer in *Radecki* was far less ambiguous than that used in this case. Finally, defendants express clarification, immediately after serving the offer, provided the Court with persuasive evidence of the parties intention. No such clarification exists in this instance.[6]

Two other recent decisions, *Shorter v. Valley Bank & Trust, supra,* and *Rohrer v. Slatile Roofing and Sheet Metal Co., Inc.,* 655 F.Supp. 736 (N.D.Ind.1987), addressed the proper construction of an accepted Offer of Judgment. In *Shorter,* defendants' offer allowed "judgment to be taken against it by plaintiff in the sum of $125,000.00, together with costs accrued to this date." *Id.* at 716. The Court concluded that this offer "said nothing which terminated any liability Valley Bank may have had ... for Shorter's attorneys' fees." *Id.* at 720. Defendants' offer is semantically closer to this language than the language used in *Radecki.*

Similarly, the Court in *Rohrer,* found an offer "to allow judgment to be taken against it in this action for the aggregate sum of $3,200, *i.e.,* $800.00 for each of the plaintiffs", to be exclusive of costs. *Rohrer,* 655 F.Supp at 738.[7] Although *Shorter* is clearly distinguished by the fact that the substantive statute at issue did not define attorneys' fees as costs, *see,* 29 U.S.C.A. § 216(b) ("The court ... shall, in addition to any judgment awarded to the plaintiff ... allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action."), it is relevant in terms of interpreting the meaning of the words used in defendants' offer. *Rohrer* was decided pursuant to a statute which did define fees as costs, and the Court was, therefore, correct under *Marek,* to add costs to the judgment.

*Rohrer* is somewhat misleading, however, in that it held that "Unless a defendant's offer expressly provides that the amount includes all costs, the Court should determine costs under Rule 68." *Rohrer,* 655 F.Supp. at 738. *Marek* did not hold that an offer had to refer to *all* costs. Rather, the Court held that a judgment entered pursuant to an offer that "recited" costs were included would necessarily include costs and thus, in the context of § 1988, attorneys' fees. The Court in *Radecki* more accurately interpreted this language.[8]

6. The principle enunciated in *Radecki* is relevant but not dispositive in light of the overwhelming evidence indicating that the offer excluded fees:

Moreover, Rule 68 does not require a laundry list of the elements of relief included within an offer or specific mention of attorney fees, and it runs counter to the purpose of Rule 68 to assume that forms of relief not mentioned are not intended to be included within the sum offered. Rule 68 is designed to encourage complete settlement, not simply to resolve the issues of liability and remedies. *Id.* at 401.

7. *See also, Tyler v. Meola,* 113 F.R.D. 184, 186 (N.D.Ohio 1986). "Unlike the normal settlement situation, it is incumbent upon the movant under Rule 68 to expressly state that the offer of judgment figure includes an amount setting any claims for attorney fees." The substantive statute in *Tyler* did not define fees as part of the costs but rather allowed the court to award "attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216. To the extent that this decision is relevant to the case at

bar, the court finds that it incorrectly interpreted *Marek.* Nothing in *Marek* supports the analysis that a Rule 68 offer must expressly itemize an amount tendered for fees nor does it support the proposition that in a normal settlement negotiation a parties fee liability can be terminated without such an issue being discussed. *See, Evans v. Jeff D.,* 475 U.S. 717, 736, 106 S.Ct. 1531, 1542, 89 L.Ed.2d 747 (1985).

8. Other recent circuit decisions interpreting Rule 68 offers did not address the exact issue before this court. *Oates v. Oates,* 866 F.2d 203 (6th Cir.1989), *cert. denied,* —— U.S. ——, 109 S.Ct. 3163, 104 L.Ed.2d 1025 (1989), addressed whether 18 U.S.C. § 2520 defined attorney fees as part of "costs." The court found that it did not and affirmed the District courts denial of plaintiffs application for fees. In *Oates* the defendants offer which plaintiff accepted, stated that "This amount covers all amounts which plaintiffs may be entitled to in this action." The Circuit Court wrote that "if the statutory attorney's fees were defined as part of 'costs' then defendant's Offer would have to be read to in-

It is thus clear that under the totality of circumstances, an assessment of costs and attorney fees is appropriate. Defendants offer did not exclude costs but neither did it "recite" that costs were included. The offer thus falls squarely under the third step of the *Marek* analysis. This fact is, again, particularly clear in light of Judge Sarokin's order which directed the parties to file papers in support of an application for fees.

Two issues remain for the Court's resolution. First, whether plaintiff can recover under § 1988, attorneys' fees expended in defense of the state criminal prosecution, and second, what constitutes a reasonable fee under § 1988?

■ Plaintiff argues that work done in defense of the criminal prosecution is compensable under § 1988 as it was "helpful," "directly relevant" and "of a type ordinarily necessary" to secure the final result obtained from the litigation. This argument is unpersuasive as it ignores the clear language of the statute and the relevant Supreme Court precedent.

Section 1988 authorizes the Court to award a reasonable fee "in an action or proceeding to enforce" one of the listed civil rights laws. Two points must be stressed. First, the statute speaks of an action *to enforce* a civil law. Although the operative facts of the criminal case and the federal civil right case were similar, this fact alone does not transform an action in defense into an action to enforce. The burdens and standards of proof in a civil action are dramatically different than that of criminal defense. The work performed in the state action may have been related and even helpful to the prosecution of the federal action, but it was never an action to enforce § 1983.

Second, although the scope of § 1988 has been expanded by recent Supreme Court precedent, it has not been expanded to the point of encompassing *criminal* defense as distinct from the purely civil laws delineated in the statute. The majority of Courts addressing this issue have so held. *Greer v. Holt*, 718 F.2d 206, 208 (6th Cir.1983), ("We do not believe that the term 'proceeding' in § 1988 is broad enough to include defense of a criminal case"); *McKeven v. Vondollen*, 681 F.Supp. 999, 1003 (N.D.N.Y.1988).[9] The language of the statute simply does not permit such an expansive interpretation.

Moreover, it takes significant semantic gymnastics to argue that when Congress used the words *civil* and *enforce* they also meant to encompass a criminal action in defense. The state criminal prosecution was never an action or proceeding designed to vindicate plaintiff's civil rights. In actuality, it formed part of the substance of plaintiff's Complaint. As such, fees expended in defense of an unjust state criminal prosecution form part of plaintiff's damages not § 1988 reasonable attorneys' fees. A contrary interpretation would render the words used by Congress not only superfluous but, essentially, meaningless.

Plaintiff's reliance on *Cameron v. Fogarty*, 806 F.2d 380 (2d Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987) is misplaced. In *Cameron*, the Court held that a state criminal conviction was a defense to a § 1983 action asserting that the arrest was made without probable cause. *Id.* at 389. This result is entirely consistent with that reached today and does not support the proposition that fees spent in defense are compensable un-

clude 'all costs and attorney's fees accrued ...'" *Id.* at 205.

*Grosvenor v. Brienen*, 801 F.2d 944 (7th Cir. 1986), concerned whether preoffer attorneys' fees were to be added to judgment award to determine whether result obtained by plaintiff was more favorable than offer of judgment plaintiff rejected.

9. *Stathos v. Bowden*, 728 F.2d 15, 22 (1st Cir. 1984) is clearly distinguished. In *Stathos*, the defendants instituted a state declaratory judg-

ment action after learning of plaintiff's intent to sue in federal court. The issues and proofs were exactly identical in the two cases and the plaintiffs were forced to defend it "lest" they lose their federal action through collateral estoppel. *See Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). No such considerations apply in this case where the state action was a criminal prosecution which formed part of the basis of plaintiff's complaint.

der § 1988. The Court does not quarrel with the proposition that plaintiff had no choice but to defend the criminal case and that some of that work was relevant to the federal suit. But, plaintiff would have defended the criminal case irrespective of his intention to institute a federal action. The fact that plaintiff was criminally vindicated supports the substance of his Complaint not his § 1988 application.

Equally unpersuasive is plaintiff's assertion that "Indeed, the United States Supreme Court has held that legal services rendered in state proceedings under § 1988 will be compensable where the work performed was 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'" *Citing Pennsylvania v. Delaware Valley Citizens Council*, 478 U.S. 546, 561, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1985). First, the state proceeding was never an action *under* § 1988. Second, the Court's language in *Pennsylvania* referred directly to its opinion in *Webb v. Dyer County Bd. of Ed.*, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1984) concerning the recovery of fees expended pursuing *optional administrative* proceedings. There is a clear distinction between an administrative proceeding designed to remedy a perceived civil rights violation and defense of an involuntary criminal prosecution.[10] The Court wrote that

> [I]t is difficult to treat time spent years before the complaint was filed as having been 'expended on the litigation' or to be fairly comprehended as 'part of the costs' of the civil rights action. Of course, some of the services performed before a lawsuit are performed 'on the litigation.' Most obvious examples are the drafting

of the initial pleadings and the work associated with the development of the theory of the case. *Id.* at 242–243, 105 S.Ct. at 1928–1929.

Similarly, it is difficult to treat time spent defending and appealing the municipal court conviction as having been expended on or in the development of the civil rights case. The majority of plaintiff's time was spent researching and drafting documents on purely state issues. It is internally inconsistent to argue that this work is of the type ordinarily necessary to litigate a § 1983 action. If it were, the concept of damages would be subsumed into § 1988 costs and the time plaintiff spent in jail would be compensable as time developing the theory of his case. This time formed part of the plaintiff's damages and is, therefore, not within the purview of § 1988.

The Court now turns to the ultimate issue of what constitutes a "reasonable" fee in the context of § 1988? The statute does not define reasonable but both the House and Senate reports refer to *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) which delineates 12 factors to be considered by the court.[11] In *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1982), the Supreme Court addressed how these factors should be applied.

The Court wrote that the "most useful point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. at 1939. The Court's consideration of hours expended should include time

---

**10.** To the extent that *N.C. Dept. of Transp. v. Crest St. Council*, 479 U.S. 6, 15, 107 S.Ct. 336, 342, 93 L.Ed.2d 188 (1986) expanded this holding to encompass administrative proceedings even if not technically "to enforce" one of the § 1988 civil rights laws, this holding does not sweep so broadly as to encompass criminal defense.

**11.** The 12 factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance

of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d, at 717–719. These factors derive directly from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106 (1980).[1]

spent litigating the fee application. *Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir.1978); *Institutionalized Juveniles v. Sec. of Pub. Wel.*, 758 F.2d 897 (3rd Cir. 1985). After making this initial calculation the Court can adjust the fee award either up or down with particular reference to the "results obtained." An upward adjustment is only appropriate "in some cases of exceptional success." *Id.* It should also be noted that many of the *Johnson* factors are subsumed within the initial calculation, particularly quality of representation which "generally is reflected in the reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1983). As such, the product of a reasonable fee and the number of hours expended on the litigation "is presumed to be the reasonable fee contemplated by § 1988." *Id.* at 897, 104 S.Ct. at 1548.[12]

 After review of the extensive documentation submitted in support of and in opposition to this application, the Court finds that an award of $90,276.25 in attorneys' fees and $8,656.30 in expenses, for a total of $98,932.55, represents a reasonable fee under § 1988. This figure represents the product of hours spent by each attorney in furtherance of the federal action multiplied by the three attorneys' current billing rate.[13] Use of the current rate is justified because of the delay in payment to plaintiff and the significant disruption of his legal practice caused by the litigation of this suit. The Court finds that the success achieved was not "exceptional" warranting an upward adjustment of the award. Finally, the Court notes that this case was not overstaffed but rather the burden of the various actions were efficiently separated and handled by the three attorneys. The award in this matter is $98,932.55.[14]

SO ORDERED.

---

12. The Court also recently addressed the issue of whether a reasonable fee is the historic billing rate or a current market rate. *Missouri v. Jenkins,* ___ U.S. ___, 110 S.Ct. 20, 106 L.Ed.2d 633 (1989). The court held that an appropriate adjustment for delay through the use of a current rate, was within the contemplation of the statute.

13. The Court recognizes the split of authority concerning the availability, under § 1988, of attorney fees for pro se attorney litigants, *See, Lawrence v. Staats,* 586 F.Supp. 1375 (D.D.C. 1984) (unavailable); *Levine v. Heffernan,* 691 F.Supp. 173 (W.D.Wis.1988) (unavailable), and finds the cases in favor of such awards more persuasive; *Lanasa v. City of New Orleans,* 619 F.Supp. 39 (D.C.La.1985); *Duncan v. Poythress,* 777 F.2d 1508 (11th Cir.1985), *cert. denied,* 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986). It is particularly significant to note that the petition for certification in *Duncan* specifically addressed the issue of the availability of attorney fees, under § 1988, for pro se attorney litigants. Only Justices White and Burger dissented from the denial of certification. Although the Third Circuit has not specifically addressed this issue, the language used in *Pitts v. Vaughn,* 679 F.2d 311 (3d. Cir.1982) holding that "a nonlawyer, *pro se* litigant is not entitled to attorney's fees under § 1988" indicates that the court drew a clear distinction between an attorney *pro se* and a non attorney *pro se*. *See Also, Cunningham v. F.B.I.,* 664 F.2d 383 (3d Cir. 1981); *Delaware Valley Citizens' Council v. Com. Of Pa,* 762 F.2d 272 (3d Cir.1985), *aff'd in part rev'd in part,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (In house counsel entitled to fees).

14.

| | Hours | Rate | Total |
|---|---|---|---|
| Andrew J. Kyreakakis | | | |
| 1987 | 21.25 | 175 | $ 3,718.15 |
| 1988 | 148.25 | 175 | 25,943.75 |
| 1989 | 218.95 | 175 | 38,316.25 |
| Subtotal | 388.45 | 175 | $67,978.75 |
| Anthony J. Ambrosio | | | |
| 1988 | 19 | 200 | $ 3,800.00 |
| 1989 | 30.75 | 200 | 6,150.00 |
| Subtotal | 49.75 | 200 | $ 9,950.00 |

|  | Hours | Rate | Total |
|---|---|---|---|
| Sommerville, Radding & Campbell | | | |
| 1989 | 8 | 150 | $ 1,200.00 |
| Roger Lowenstein | | | |
| 1988 | 38.6 | 175 | $ 6,755.00 |
| 1989 | 25.1 | 175 | 4,392.50 |
| Subtotal | 63.7 | 175 | $11,147.50 |
| Expenses | | | $ 8,656.30 |
| Grand Total | | | $98,932.55 |